(No. 27245.—

WESTERN FOUNDRY COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOHN LANUCHA, Defendant in Error.)

*Opinion filed November 16, 1943.*

PEREGRINE & BRUEGGER, for plaintiff in error.

J. W. KOUCKY, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

John Lanucha, a molder and cleanup man, made a claim for compensation from his employer, the Western

Foundry Company, Inc., for disablement claimed to have been caused by pulmonary tuberculosis, to which he was last exposed while in such employment. The claim for compensation was denied by the arbitrator and on review the finding was set aside by the Industrial Commission which allowed compensation at the rate of $11 per week for a period of 400 weeks and thereafter an annual pension of $352, payable in twelve equal monthly installments of $29.33 during life, as provided in paragraph (f) of section 8 of the Workmen's Occupational Diseases Act. (Ill. Rev. Stat. 1941, chap. 48, par. 172.8.) This award, on review, was confirmed by the superior court of Cook county. We have allowed a writ of error to this court.

The facts were substantially as follows: John Lanucha, defendant in error, commenced work in March, 1918, for plaintiff in error, the Western Foundry Company, as a molder in its plant and continued as such until laid off on account of no work during the month of June, 1934. He was re-employed on December 10, 1934, and continued until November 13, 1936. During the latter period, however, he was not engaged as a molder, but as a cleanup man about the plant for which he was paid forty cents an hour for forty hours a week until May 11, 1936, and from then on until November 13, 1936, at the rate of $12 a week. His earnings for the year preceding November 13, 1936, the last day of his employment, amounted to $728. The evidence reveals that during the time he worked for plaintiff in error as a molder he came in contact with sand and dust; that after he was laid off he returned to work and his occupation was that of laborer; that he followed this occupation until his disablement on November 13, 1936; that as a laborer he worked in cars with sand and when they brought the forms in rolls to the cars the wind blew the dust and sand in his face and mouth; that he took the ashes out of the furnaces located in the plant and filled them with coke; that from May to

November, immediately preceding his disablement, he filled the furnaces with coal and cleaned them; that there was plenty of dust because sand was used and sprinkled about; that he pitched dirt in the boxcars in the summertime and before he was laid off in November, 1936, was pitching sand into boxcars.

W. M. Huisinga, called as a witness for defendant in error, testified he was employed by the Western Foundry Company as an employment manager and safety man, and made trips throughout the plant daily; that the last few days Lanucha worked in November, 1936, he was raking and cleaning gangways, cleaning up the dregs throughout the plant; that the sweepings would be accumulated in a pile and Lanucha would load the refuse in a wheelbarrow, carry it to the yard and run it up a ramp and dump it in an open car; that in the mornings he would rake the gangways inside the plant, scrape them with a scraper-like hoe about two feet wide; that the sand on the gangways would be in spots about one-fourth inch thick; that the gangways have a brick foundation with about an inch of solid, old, accumulated sand packed on top; that in order to keep it from getting too thick the surface was scraped every day.

Doctor Albert C. Field, called by defendant in error, an expert in X-ray work and a specialist in tuberculosis and silicosis cases, who examined Lanucha on December 13, 1938, and who had examined two X-ray films, testified that in his opinion Lanucha had pulmonary tuberculosis; that the two films show some adhesions to the diaphram, the costophrenic and some softening, which is suggestive of an activity of pulmonary tuberculosis; that the inhalation of quartz or sand has both a chemical and traumatic effect upon the lungs; that the traumatic effect is when you inhale the small particles of silica; that the edges are sharp and it has a tendency to make small lacerations in the part of the lung into which they come in contact; that

where one is exposed to dust or quartz, especially where you have had fibrosis and damage to the lung tissue, it produces a soil that is receptive to the tubercular germs; that there was a causal relationship between the tubercular condition and the inhalation of small particles of quartz. He also testified there was some evidence of silicosis but the silicosis was not disabling; that it was the active pulmonary tuberculosis that disabled defendant in error from doing any work; that when the small particles of quartz first strike the lungs, the cutting and irritating and subsequent inflammation and infection will be sudden; that the constant laceration and lowering resistance makes one susceptible to the germs and prepares the soil for the tuberculosis; that tuberculosis was the main thing that was disabling Lanucha at the time he examined him.

Doctor Field also testified in answer to a hypothetical question that there was a causal connection between the occupation Lanucha was engaged in and the subsequent condition of ill-being, namely, the tuberculosis, and gave as his reason, that sand caused small lacerations or breaks in the lungs, lowering resistance, making a fertile field for the tuberculosis to lodge.

Doctor Harold E. Davis, a specialist in radiology and the use of the X ray, who was the only witness called by plaintiff in error, testified from an examination of three X-ray pictures taken in the case; defendant in error's exhibit 1, taken November 23, 1936, defendant in error's exhibit 2, taken on March 2, 1938, and plaintiff in error's exhibit 1, of September 19, 1936. He testified he saw no changes in any of the three films; that from his X-ray study and diagnosis, it revealed a simple uncomplicated nodular silicosis, which, over a period of some time from September, 1936, until the last film, no change was shown; that he was familiar with foundries where sand molding is done. He also testified, from his examination of plaintiff in error's exhibit 1, that the film showed the marks or

evidence of early silicosis. In answer to a lengthy question which we must assume was hypothetical, covering a smiliar situation as to occupation to that of Lanucha, and where similar work was carried on, he testified he knew of no way that a man could acquire tuberculosis at such occupation.

Plaintiff in error contends as a matter of law an employer is not liable under the Workmen's Occupational Diseases Act, effective October 1, 1936, in a case of silicosis, with or without tuberculosis, where it is undisputed that the employee was employed during a period of only forty-four days after the effective date of the act, because in such cases section 25 of the act requires a period of at least 60 days of exposure in employment after the effective date thereof. Defendant in error, on the other hand, claims he is not barred by the provisions of section 25 from recovering, under the provisions of the act for disability caused solely by pulmonary tuberculosis incidental to non-disabling simple silicosis, compensation from plaintiff in error, in whose employment he was employed forty-four days after the adoption of said act, and growing out of which employment the active pulmonary tuberculosis and disability occurred. It can readily be seen the difficulty lies in the proper application of the provisions of the statute to the facts as shown by the evidence.

The Workmen's Occupational Diseases Act defines occupational disease as "a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where the said diseases follow as an incident of an occupational disease as defined in this section." Ill. Rev. Stat. 1941, chap. 48, par. 172.6.

Section 25 provides: "An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time however

short, he is employed in an occupation or process in which the hazard of the disease exists. The employer liable for the compensation in this Act provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease claimed upon regardless of the length of time of such last exposure, provided, that in cases of silicosis or asbestosis, the only employer liable shall be the last employer in whose employment the employee was last exposed during a period of sixty (60) days or more after the effective date of this Act, to the hazard of such occupational disease, and, in such cases, an exposure during a period of less than sixty (60) days, after the effective date of this Act, shall not be deemed a last exposure." It will thus be observed there is a distinction between claims based upon silicosis or asbestosis where there must be a period of exposure of at least sixty days and claims in other cases where the exposure need be, as provided in the statute, "for any length of time however short."

Section 6 of the act provides: "In this Act the term 'Occupational Disease' means a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where the said diseases follow as an incident of an occupational disease as defined in this section. A disease shall be deemed to arise out of the employment, only if there is apparent to the rational mind upon consideration of all the circumstances, a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employ-

ment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee."

It is urged by counsel for defendant in error that it may be difficult to prove, in a given case of active tuberculosis, when such a case results from employment and when it results from ordinary causes. And while this might be true, compensation is not to be paid except under the provisions of section 6 of said act. By such act ordinary diseases are only compensable in the manner prescribed and a disease does not arise out of employment if it comes from a hazard to which workingmen have been equally exposed outside of the employment. We do not think it could reasonably be said that pulmonary tuberculosis is other than an ordinary disease, and it is a disease to which workmen would be equally exposed outside of their employment.

It would seem clear from the above provisions of this section that compensation is not payable for the ordinary diseases of life unless they are incidental to an occupational disease. In order for defendant in error to recover he must show the disease, "pulmonary tuberculosis," is incidental to the occupational disease, which in this case is shown as nondisabling silicosis. Defendant in error admits this but contends that where it is shown in any case that an ordinary disease is incidental to an occupational disease, the ordinary disease becomes for all purposes and intents of the act, an occupational disease and compensable as such.

Under the statute, ordinary diseases of life are compensable only where the said diseases follow as an incident of an occupational disease. It can readily be seen before ordinary diseases are compensable they must be incidental to some occupational disease. The two conditions must be present in such cases and we cannot see how it could reasonably be said that when these necessary con-

ditions exist the ordinary disease becomes for all intents and purposes the occupational disease. This in our judgment would be contrary to the plain provisions of section 6. As we interpret the statute, an ordinary disease is compensable only when the said disease follows as an incident of the occupational disease. The defendant in error's claim is therefore based upon an occupational disease. That he would have had a right of recovery if he had been employed under the same conditions for sixty days after the effective date of the act could not be questioned. Tuberculosis incidental to silicosis is compensable. *Hansell-Elcock Co.* v. *Industrial Com.* 376 Ill. 151.

This court in the case of *Morris Metal Products Co.* v. *Industrial Com.* 370 Ill. 292, said: "It is evident the legislature enacted a law which, for all occupational diseases except silicosis and asbestosis, went into effect October 1, 1936, but as to the latter diseases could, in no event, be effective until sixty days after October 1, 1936." It will be observed that for silicosis and asbestosis the last employer was defined as "the last employer in whose employment the employee was last exposed during a period of sixty (60) days or more, * * * to the hazard of such occupational disease." This part of the statute was evidently enacted for the purpose of extending the time in cases of silicosis or asbestosis for a period of sixty days before the last employer could be held liable, and in such cases an exposure during a period of less than sixty days after the effective date of the act would not be deemed an exposure. If such a limitation prevails in silicosis cases it would only seem reasonable that it was intended to be applicable to cases of ordinary diseases which are incidental to silicosis. If it arose by reason of some other occupational disease it would be different. To hold otherwise would make nugatory the provisions of the statute giving the employer a sixty-day period in which to determine whether or not a man is a reasonably good risk in

an occupation in which a hazard of silicosis exists. The hazard would exist because some disease not otherwise compensable might arise from the existing condition of silicosis.

Defendant in error's claim being barred by the provisions of section 25 of the act, the judgment of the superior court is reversed and the award of the Industrial Commission set aside. Our conclusion renders unnecessary a consideration of the other points raised.

*Judgment reversed; award set aside.*