(No. 39084.—

ALLIS-CHALMERS MANUFACTURING COMPANY, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(KENNETH CRAWFORD, Appellee.)

*Opinion filed Sept. 28, 1965.—Rehearing denied Nov. 18, 1965.*

EARL S. HODGES, of Springfield, (SAMUEL C. PATTON, of counsel,) for appellant.

C. A. LIVINGSTON, of Springfield, (WILLIAM H. BECK-WITH, of counsel,) for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This is an appeal from an order of the circuit court of Sangamon County affirming a finding of the Industrial Commission that employee, Kenneth Crawford, had a compensable occupational disease which rendered him wholly and permanently incapable of work, and awarding him compensation, including a monthly pension for life.

The employee operated a drilling machine for Allis-Chalmers Manufacturing Company. His skin was subject to repeated exposure to a liquid coolant composed of water and a water-soluble petroleum product, which sprayed and splashed upon him. Pyoderma, a form of pus-producing dermatitis, developed over his body between April and July, 1958. He contends that nephritis, first diagnosed in June, 1959, after several months of illness, resulted from, or followed as an incident to, a bacteria present in the skin infection. His employer denies that there is any evidence that the disease was a compensable occupational disease and denies causal connection between the employee's disabled condition and his employment.

The first two paragraphs of section 1(d) of the Workmen's Occupational Diseases Act, (Ill. Rev. Stat. 1959,

chap. 48, par. 172.36(d),) then read: "(d) In this Act the term 'Occupational Disease' means a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where the said diseases follows [sic] as an incident of an occupational disease as defined in this section.

"A disease shall be deemed to arise out of the employment, only if there is apparent to the rational mind upon consideration of all the circumstances, a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need not to have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence."

It was said in *Kniat v. Industrial Com.* 378 Ill. 210, 214, that three elements must be present in order to establish a compensable occupational disease. First, it must arise out of the employment; second, it must arise in the course of employment; and third, it must not be an ordinary disease of life to which the public is exposed outside the employment, unless such ordinary disease follows as an incident of an occupational disease. (See also: *Western Foundry Co. v. Industrial Com.* 384 Ill. 420.) The employer here takes the position that none of these essential elements has been established. There is substantial evidence from which the

Commission could reasonably conclude that the disabling disease arose out of and in the course of employment so as to be causally connected thereto, and in such case we will not substitute our judgment for that of the Commission. (*Frenzel Construction Co.* v. *Industrial Com.* 31 Ill.2d 310.) We concern ourselves, therefore, with the critical issue of whether pus-producing dermatitis is an occupational disease since nephritis followed as an incident thereto.

Medical witnesses testified generally that dermatitis in its various forms, including pyoderma, is an ordinary disease of life to which people in all walks of life are exposed outside of employment, and that it is not peculiar to any particular industry or occupation. Based upon the broad aspects of this testimony, and upon a mechanical application of the *Kniat* formula, the employer reasons that dermatitis cannot be an occupational disease since it is one to which the public is exposed outside the employment. There is language in the *Kniat* opinion which may tend to lend support to such reasoning, but we believe the employer's theory too narrowly construes both the statute and certain decisions of this court hereinafter discussed.

The first paragraph of section 1(d) above quoted does not place all ordinary diseases of life in a noncompensable status, but only those to which "the general public is exposed outside of the employment." The next paragraph, in turn, speaks of a disease which follows "as a result of the exposure occasioned by the nature of the employment." In each instance "exposure" is a predominant factor. We believe it was the legislative intent that where an employee contracts a disease, due to exposure to hazards of a peculiar or unusual condition of work in a greater degree and in a different manner than the public generally, he is to be deemed as suffering from a compensable occupational disease. (Cf. *Mills* v. *Detroit Tuberculosis Sanitarium*, 323 Mich. 200, 35 N.W.2d 239.) Though not expressly articulated, this con-

struction of the section was implicit in both *Stewart Warner Corp.* v. *Industrial Com.* 376 Ill. 141, and *Western Foundry Co.* v. *Industrial Com.* 384 Ill. 420.

In *Warner,* recovery was not denied under an inflexible concept that tuberculosis is an ordinary disease of life to which the general public is exposed outside employment, but because, as the opinion states: "Even though the temperature changes and the sulphur dioxide gas caused the change in the deceased's physical condition, it does not follow from such proof that tuberculosis had its origin in the hazards of the employment and that it came from such hazard as a rational consequence as is required by the statute." (p. 145.) Again, it was stated in *Western Foundry*: "By such act ordinary diseases are only compensable in the manner prescribed and a disease does not arise out of employment if it comes from a hazard to which workingmen have been equally exposed outside of the employment. We do not think it could reasonably be said that pulmonary tuberculosis is other than an ordinary disease, and it is a disease to which workmen would be equally exposed outside of their employment." (p. 426.) The thrust of both decisions is that diseases, provided they are shown to have arisen out of and in the course of the employment, are to be compensable where the exposure is greater than that of the public generally.

Since benefits under workmen's compensation laws were for the most part restricted to accidental injuries or death, many injustices arose where there was no accident and, instead, injury, disease or death were occasioned by slow, gradual and insidious processes arising out of and in the course of employment. (See *e.g. Peru Plow and Wheel Co.* v. *Industrial Com.* 311 Ill. 216.) Occupational disease laws were designed to correct these injustices and to stand side by side with workmen's compensation laws as humane and remedial statutes to place upon an employer the responsibility for disease and injury directly attributable to

the employment. To adopt the narrow construction advanced by the employer here would defeat such purposes, and permit an area of injustice and inconsistency to remain.

A former plant physician for the employer testified on behalf of the claimant that he had encountered innumerable cases of dermatitis among the employees of the plant, which he attributed to their exposure to cutting oils and coolants used in machinery processes. This testimony, together with the evidence that claimant's skin and clothing became wet with the coolant as he operated his drilling machine, and that the pyoderma resulted from such repeated exposure, is sufficient to indicate that he was exposed in his employment to the risk of contracting dermatitis to a far greater degree and in an entirely different manner than the general public. Accordingly, we hold that, under the proof in this record, the dermatitis was an occupational disease within the intent and meaning of the act, and that compensation was properly awarded for the nephritis which followed as an incident of such disease.

The last exposure was December 22, 1959, and claimant was given a six months leave of absence on December 28, 1959, the date claimant's doctor advised the employer by letter that claimant was wholly disabled by glomerulo nephritis. He had, over a period of more than 18 months, repeatedly given the employer notice of illness and made claims to the mutual aid society, but did not give notice of a claim for occupational disease until April 4, 1960. Under the existing circumstances, where the employee had insufficient medical knowledge that there was causal connection between the kidney ailment and his employment, we cannot sustain the employer's contention that the claim is barred for failure to give notice in apt time.

The judgment of the circuit court of Sangamon County is affirmed.

*Judgment affirmed.*