(No. 47784.—

CATERPILLAR TRACTOR CO., Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Gene Farmer, Appellee.)

*Opinion filed March 29, 1976.*

Robert F. Fahey, of Peoria, for appellant.

McConnell, Kennedy, Quinn & Morris, of Peoria (William J. Thomas, of counsel), for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

An arbitrator for the Industrial Commission found that petitioner, Gene Farmer, was permanently and totally disabled by reason of an occupational disease contracted while employed by respondent, Caterpillar Tractor Company, and awarded him compensation and a pension for life. Respondent petitioned for review of the arbitrator's decision, and following the taking of additional evidence the Industrial Commission affirmed the award. Respondent sought *certiorari*, the circuit court of Peoria County confirmed the decision of the Industrial Commission, and respondent appealed. Rule 302(a).

Respondent contends that petitioner failed to prove that he was suffering from an occupational disease compensable under the Workmen's Occupational Diseases Act (Ill. Rev. Stat. 1969, ch. 48, par. 172.36 *et seq.*). It argues that the evidence shows that the disease from which

petitioner was suffering was an ordinary disease of life, that it was contracted prior to his being employed by respondent, and that the atmospheric conditions in the area in which he worked were in no way harmful and could not have caused the disease from which petitioner suffered. Petitioner contends that the findings of the Industrial Commission are supported by the evidence and that the circuit court correctly confirmed the decision.

From February 1969 through November 1970 petitioner was employed by respondent as a laborer in what was known as the shot-peen room. In the shot-peen process crankshafts were placed in a machine and metal shot was propelled against them for the purpose of removing any rust and "hardening" their surfaces. The crankshafts were placed in the machine through a double door system designed to prevent the escape of shot and dust. The machine was equipped with a self-contained ventilation system designed to maintain a partial vacuum in the shot-peen chamber, and with filters to remove dust from the air removed by the vacuum process.

Petitioner testified that when the machine was running the room stayed partially full of dust and that every time the door was opened to put in a crankshaft "the room would get full of dust." Every night his nose was "stopped up" with the dust. After several months he became sluggish and felt ill. He was hospitalized twice. Although he continued to work until approximately December 23, 1970, he last worked in the shot-peen room in November 1970.

Dr. Stanley Bugaieski, an internist specializing in diseases of the chest, called by petitioner, testified that upon physical examination of petitioner, review of X rays and a biopsy, he made a diagnosis of interstitial pulmonary fibrosis. In response to a hypothetical question, amended to meet respondent's objections, he expressed the opinion that the exposure to dust described in the question might or could have caused the condition which he diagnosed as

an interstitial pulmonary fibrosis. He stated further that the condition of ill-being which he described was not one to which the general public was subject, that the condition was permanent, that petitioner could not perform "manual or physical labor" or "sedentary work which involves being in a dusty atmosphere."

Dr. William B. Buckingham, an internist specializing in pulmonary diseases, called by respondent, testified that upon examination of X-ray films made on February 5, 1969, November 16, 1970, December 30, 1970, January 5, 1971, and November 23, 1971, and a biopsy of tissue taken from petitioner's lung he made a diagnosis of interstitial pneumonitis, a condition to which "the general public is subject." He stated that the interstitial pneumonitis was "present and active" when the X ray was made on February 5, 1969. He explained that a pneumonitis is "a relatively uncommon disease," the cause of which is unknown. A pneumoconiosis is "an injury to the lungs resulting from an exposure to inorganic dust of some type ***." In response to a hypothetical question he testified that there was no relationship between the metal dust that "*** this hypothetical individual may have breathed and the interstitial pneumonitis which I found to be present in this hypothetical man."

Relying upon section 1(d) of the Workmen's Occupational Diseases Act (Ill. Rev. Stat. 1969, ch. 48, par. 172.36(d)) respondent argues that the X ray made in February 1969, when petitioner was first employed by respondent, proves that the disease from which he suffered existed at that time and therefore was not compensable. Section 1(d) in pertinent part provided:

> "(d) In this Act the term 'Occupational Disease' means a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where the said diseases follow as an incident of an occupational disease as defined in this Section.

A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind, upon consideration of all the circumstances, a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need not to have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence." (Ill. Rev. Stat. 1969, ch. 48, par. 172.36(d).)

Respondent argues that not until amendment of the Workmen's Occupational Diseases Act by enactment of Public Act 79—78 (approved June 30, 1975, effective July 1, 1975) was there any provision for compensation for "aggravation" of ordinary diseases of life. Respondent's argument presumes the failure to prove an occupational disease and does not address itself to the issue presented by this record. The employment history to which petitioner testified showed a lengthy period of exposure to metallic dust prior to his being employed by respondent and under these circumstances the portion of section 1(d) here applicable provided:

"The employer liable for the compensation in this Act provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease claimed upon regardless of the length of time of such last exposure, except, in cases of silicosis or asbestosis, the only employer liable shall be the last employer in whose employment the employee was last exposed during a period of 60 days or more after the effective date of this Act, to the hazard of such occupational disease, and, in such cases, an exposure during a period of less than 60 days, after the effective

date of this Act, shall not be deemed a last exposure." Ill. Rev. Stat. 1969, ch. 48, par. 172.36(d).

In support of its contention that the evidence failed to show that atmospheric conditions in the shot-peen room were harmful or could have caused petitioner's disease, respondent relies principally on the testimony of its industrial hygienist, C. Raymond Hickey. Hickey testified that during the 6½ years of his employment by respondent he had made periodic checks of the ventilation systems and that he had been in the shot-peen room itself approximately 100 times. He stated that there was no scientific way of checking the effectiveness of the ventilation system in the shot-peen room and that he was only able to insure that it was functioning adequately by sight and by soliciting employee comments. He testified that on September 9, 1971, some nine months after petitioner had left the company, air tests in the shot-peen room showed the level of dust particles to be substantially below those permitted under Federal industrial standards. On one occasion, as the result of obstruction of the main overhead duct to the shot-peen room, "there was an excessive accumulation of dust and shot on the floor and equipment and walls." Two of respondent's employees whose duties required them to be in the shot-peen room every day during the time when petitioner was employed there testified that the shot-peen room was clean; however, the testimony showed that on several occasions there was dust in the air due to a malfunctioning of the shot-peen machine's ventilation system.

As the foregoing review of the evidence shows, this record presents conflicting testimony concerning both the presence of metallic dust in the shot-peen room and the nature and cause of petitioner's disability. The hospital record of petitioner's confinement in Proctor Community Hospital from January 4, 1971, to January 23, 1971, offered in evidence by respondent, contained entries tending to corroborate both of the conflicting diagnoses

made by the physicians who testified. In *Payne v. Industrial Com.*, 61 Ill. 2d 66, 69, we said:

> "The resolution of questions of fact, including questions as to the nature and extent of disability and as to causation, is primarily for the Industrial Commission. (*General Steel Industries v. Industrial Com.*, 49 Ill. 2d 552.) We cannot substitute our judgment for that of the Commission's (*Allis-Chalmers Manufacturing Co. v. Industrial Com.*, 33 Ill. 2d 268) unless its finding is contrary to the manifest weight of the evidence. (*Rysdon Products Co. v. Industrial Com.*, 34 Ill. 2d 326, 330; *Leason v. Industrial Com.*, 55 Ill. 2d 486, 493.) Clearly the finding here of the Commission was not."

The foregoing statement from *Payne* is applicable here, and the judgment of the circuit court of Peoria County is affirmed.

*Judgment affirmed.*