(No. 51642.—

THEODORE A. GRAY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Electrocast Steel Foundry Co., Inc., Appellee).

*Opinion filed September 19, 1979.*

Cornfield & Feldman, of Chicago (Alton Sharpe and Thomas W. Duda, of counsel), for appellant.

Kane, Doy & Harrington, of Chicago (Arthur O. Kane, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Claimant, Theodore A. Gray, filed a claim with the Industrial Commission under the Workmen's Occupational Diseases Act (Ill. Rev. Stat. 1971, ch. 48, par. 172.36 *et seq.*), on November 10, 1971, alleging disablement resulting from an occupational disease arising out of and in the course of his employment by respondent, Electrocast Steel Foundry Co., Inc. An arbitrator for the Commission denied compensation. The Commission, after hearing

additional evidence, affirmed and the circuit court confirmed this decision. Claimant appeals.

At the hearing before the arbitrator, claimant testified on direct examination as follows. On April 16, 1971, while working in respondent's foundry, he noticed that the dust and smoke were bothering him. Several days later he was coughing hard and had blood in his sputum. He told this to the foreman, who convinced him to work until the end of his shift. He then went to the Billings Hospital emergency room, where he got some shots and fluid. After leaving, he felt worse and was admitted to Louise Burg Hospital, where he spent 18 days in the intensive-care unit under the care of Dr. Chong Paik. He has not returned to work since. He asked the plant superintendent for part-time work in a cleaner environment, but was told he could not work there any more.

Claimant testified further that prior to April 1971 he had worked at the foundry for 17 years as a floor molder, with occasional assignments in the core room. As a molder, his duties were to mix various ingredients into a sand used to line molds for molten steel, then shovel the mixture into a pattern and ram it into place with an air hammer. The mixture he made consisted of silica sand, wood, flour, cornflour, binder, silica, molasses and water. His work area was always smoky and dusty. There were open coke fires, and when molten steel was poured into the molds, sometimes only six feet away from claimant, smoke and steam would rise from the molds.

Claimant also testified that in 1962 or 1963 he experienced pains in his chest and dizziness and spit up blood. He was admitted to Louise Burg Hospital and was absent from work for 47 weeks. In January 1971 he went to Billings Hospital, after which he missed three or four months of work, and he was hospitalized in November 1971, January 1972, and November 1972. He now weighs

105 pounds; when he was hired at the foundry he weighed 145 pounds. He had no breathing problems when hired; he now has chest pains, cough, dizziness and weakness. He has difficulty climbing stairs, carrying anything or breathing in a supine position.

On cross-examination, claimant testified that at Louise Burg Hospital in 1962 or 1963 his condition was diagnosed as bronchiectasis. Later the company doctor also diagnosed bronchiectasis, and the doctors at Billings Hospital made the same diagnosis. The doctors also told him several times over these years that he had pneumonia. He testified that he was smoking when he was hired and that he smoked one pack and two packs a day at different periods up to 1971.

Claimant introduced voluminous medical records from Louise Burg Hospital going back to 1963 and from Billings Hospital from 1971. The records establish that claimant was repeatedly hospitalized, tested and treated for lung complaints, and that over the years his condition was repeatedly diagnosed as bronchiectasis and that it was more than once diagnosed as pneumonia. The records contain numerous personal histories given by claimant, indicating, among other things, that he had pneumonia in 1953, 1964 and 1965, and that he smoked two packs of cigarettes a day for 30 years.

Dr. Abel Froman testified on claimant's behalf at the hearing before the arbitrator. He examined claimant in June 1972. His clinical examination revealed coughing, wheezing and shortness of breath which he felt were chronic. He took chest X rays that showed infiltration, fibrosis and scarring of the lungs. He noted that such infiltration and fibrosis can be produced by the inhalation of silica, but that an occupational history is necessary for such a diagnosis. On the basis of a hypothetical question incorporating claimant's testimony, Dr. Froman gave the

opinion that claimant was suffering from silicosis induced by his working conditions.

Respondent introduced the report of Dr. Harold Steinberg dated March 16, 1972. Dr. Steinberg noted claimant's occupational history, his medical history of bronchiectasis and pneumonia and his smoking. The clinical examination revealed shortness of breath and crackling rales. Dr. Steinberg took X rays that showed changes in the lungs indicative of emphysema, but no discrete nodulation or increased linear fibrosis, such as one would see with silicosis. Based on the clinical history of repeated bronchial and pulmonary infections and the long period of heavy smoking, Dr. Steinberg concluded that claimant had bronchiectasis and emphysema; he found the X rays consistent with this diagnosis, and concluded that there was no causal connection between the disease and claimant's occupation.

The arbitrator denied compensation, finding that "Petitioner failed to prove that he was exposed to the hazards of an Occupational Disease as defined in the [Workmen's Occupational Diseases] Act." Claimant appealed to the Commission, contending that "the Arbitrator erred in denying compensation."

At the hearing on review, claimant offered additional hospital records, dating from 1974 and 1975, and called an additional witness, Dr. George W. Holmes. Dr. Holmes examined claimant in May and June of 1975. Clinical examination 'revealed pulmonary fibrosis and pulmonary emphysema and an electrocardiogram revealed P waves suggestive of pulmonary disease. Dr. Holmes stated that the etiology of the disease would depend on claimant's history. When given a hypothetical question incorporating claimant's occupational history, Dr. Holmes gave his opinion that the disease was secondary to claimant's exposure to silica, gases, dust and smoke at his job. On

cross-examination, Dr. Holmes agreed that smoking, pneumonia and bronchiectasis, as well as occupational conditions, caused the pulmonary fibrosis.

As earlier indicated, the Commission affirmed the decision of the arbitrator denying compensation. In the circuit court, counsel for claimant argued the issue was not the correctness of the Commission's action denying compensation, but whether the finding of the arbitrator that claimant had not proved exposure to the hazards of an occupational disease was error. Counsel urged that if this finding was against the manifest weight of the evidence, the court must reverse the Commission's decision. The court clearly agreed that the finding of no exposure was incorrect but noted that aggravation of an ordinary disease of life by occupational conditions was not compensable under the Workmen's Occupational Diseases Act until its amendment effective in 1975. (Ill. Rev. Stat. 1975, ch. 48, par. 172.36(2)(d).) The court found that claimant's condition was traceable to pneumonia and bronchiectasis aggravated by exposure to industrial hazards, and concluded that, under the statute in effect in 1971, the Commission's decision was not contrary to the manifest weight of the evidence.

Claimant argues here, also, that the sole issue is the correctness of the arbitrator's finding of no exposure, urging that, if that finding is against the manifest weight of the evidence, the Commission's decision denying compensation must be reversed. We do not agree.

The jurisdiction of the Commission to review the evidence taken before the arbitrator and to consider any further evidence properly presented to it is original as opposed to appellate jurisdiction. Such a review is neither a trial *de novo* nor simply a review of the record, but is *sui generis*. (*Meade v. Industrial Com.* (1971), 48 Ill. 2d 215, 220-21.) The Commission is not bound by the arbitrator's

findings; it must consider all evidence presented to it and to the arbitrator in reaching a decision. (*Leason v. Industrial Com.* (1973), 55 Ill. 2d 486, 493-94. See also *Master Leakfinding Co. v. Industrial Com.* (1977), 67 Ill. 2d 517.) Assuming that the arbitrator's finding of no exposure was error, therefore, we cannot assume that the Commission's affirmance of his decision was bottomed on this erroneous finding. The issue before the Commission was, in claimant's own words, whether "[t]he Arbitrator erred in denying compensation." The Commission considered the record, heard additional testimony, and concluded that the arbitrator had not erred in denying compensation. If claimant wished the Commission to make a special finding on the correctness of the arbitrator's finding of no exposure, he could have submitted such a request in writing. (Ill. Rev. Stat. 1971, ch. 48, par. 172.54(e).) The Commission was not required to make such a special finding, however (Ill. Rev. Stat. 1971, ch. 48, par. 172.54(e)), and having failed to request one, claimant cannot now complain of its absence.

Furthermore, under section 19(f)(1) of the Workmen's Occupational Diseases Act (Ill. Rev. Stat. 1971, ch. 48, par. 172.54(f)(1)), the circuit court reviews all questions of law and fact presented by the record. (*Interlake Steel Corp. v. Industrial Com.* (1975), 60 Ill. 2d 255, 261-62.) The trial judge here considered the entire record and heard the arguments of counsel. The judge indicated that he disagreed with the arbitrator's finding of no exposure but that on his view of the record claimant suffered from a noncompensable ordinary disease of life aggravated by occupational conditions. Our review of the record indicates ample support for this conclusion in the conflicting medical testimony. The medical records introduced by claimant, the report of Dr. Steinberg introduced into evidence, and the testimony of Dr. Holmes on

cross-examination all support the view that claimant's long history of pneumonia and bronchiectasis caused, at least in part, the pulmonary fibrosis that all the experts diagnosed. We cannot say, therefore, that the trial court erred or that the decision of the Commission was against the manifest weight of the evidence.

Claimant argues that the diagnoses and personal histories contained in the medical records admitted into evidence may not be considered by the Commission or a reviewing court. He urges that such matters are hearsay not covered by the statutory hearsay exception in section 16 of the Workmen's Occupational Diseases Act (Ill. Rev. Stat. 1971, ch. 48, par. 172.51), under which the records were admitted. The statute provides:

> "The records kept by a hospital, certified to as true and correct by the superintendent or other officer in charge, showing the medical and surgical treatment given an injured employee in such hospital, shall be admissible without any further proof as evidence of the medical and surgical matters stated therein, but shall not be conclusive proof of such matters."

Claimant contends that only the "nature, scope and degree of medical treatment" come within this provision, but cites no authority for this proposition.

We note first that damaging statements in the records made by claimant in giving personal histories, such as those regarding his smoking habits, are hearsay exceptions as admissions against interest. (*Cuneo Press Co. v. Industrial Com.* (1930), 341 Ill. 569, 572.) We note further that, when the records were introduced at the hearing, counsel for claimant expressly withdrew any section 16 restrictions on their contents and offered them *in toto*. While the statute contains no indication that diagnoses in hospital records, which would appear to be an integral part of

treatment, do not constitute "medical and surgical matters stated therein," we need not decide that question. We hold only that where claimant has not objected at the hearing and indeed has expressly withdrawn any restrictions on the admissibility of the records, he cannot first raise a hearsay objection to their contents in this court.

Accordingly, the judgment of the circuit court is affirmed.

*Judgment affirmed.*