PAUL ZUPAN, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (National Steel, Granite City Division, Appellant).

Fifth District (Industrial Commission Division)    No. 5—84—0326WC

Opinion filed February 13, 1986.—Rehearing denied April 30, 1986.

WEBBER, P.J., and LINDBERG, J., dissenting.

William L. Rogers, of Keefe & DePauli, P.C., of Fairview Heights, for appellant National Steel, Granite City Division.

Michael J. Meehan, of Callis & Hartman, P.C., of Granite City, for appellee.

JUSTICE BARRY delivered the opinion of the court:

The employer, National Steel, Granite City Division (National), appeals from a judgment of the circuit court reversing the Industrial Commission's denial of benefits to the claimant, Paul Zupan. Zupan filed a claim for benefits under the Occupational Diseases Act (Ill. Rev. Stat. 1971, ch. 48, par. 172.36 *et seq.*) (hereafter the Act). Zupan alleged in his claim that he had contracted asbestosis as a result of the conditions of his employment.

The claimant was a bricklayer for National from 1951 to 1973. He would lay insulation bricks around furnaces and pipes. In 1966 or 67, the claimant had a routine chest X ray taken at National's plant. As a result of the X ray, National sent him to Dr. Lamb, a lung specialist. The claimant thereafter had a chest X ray taken every six months, un-

til 1972. In 1972, the claimant collapsed while at work because of an inability to breathe. He never returned to work at the plant.

The claimant was referred to Dr. Narscius following Dr. Lamb's death. The claimant was hospitalized in April 1973. At this time, he was diagnosed as suffering from myocardial ischemia and pulmonary fibrosis. The claimant's employment was terminated in April of 1973 and he was placed on a disability pension. Zupan filed his claim for benefits on April 17, 1974.

In 1976, the claimant was referred to Dr. S. Mohyuddin, a lung specialist. Mohyuddin confirmed the diagnosis of pulmonary fibrosis and obstructive lung disease. When the claimant consulted Mohyuddin again in 1978, Mohyuddin obtained a new medical history. It was during this history that the claimant first included a history of exposure to asbestos.

In the stipulation sheet, National disputed whether the claimant had been exposed to an occupational disease and causation. The claimant's first hearing before an arbitrator was held July 23, 1979, before arbitrator Boyd. The claimant had testified on direct examination when Boyd went off the record. The claimant was the only witness to testify that day. The hearing was never resumed. On December 20, 1979, Boyd issued an order finding that the claimant had been exposed to the hazards of an occupational disease but denying benefits. The claimant appealed. National requested a new hearing based on its lack of opportunity to cross-examine the claimant.

A new hearing was held on October 6, 1980, before arbitrator Duty. At the hearing, the claimant testified that during his employment he had used bricks and other materials which carried the Johns-Manville label and which he believed were labeled as and made of asbestos. The claimant would saw the bricks to make them fit around the plant structures. Cutting the brick caused substantial amounts of dust to enter the air. He sometimes worked in an enclosed space. The only protective clothing he wore were goggles and, during the later years, a cloth mask. The claimant testified that he also worked with "thermoflake." National, according to the claimant, subsequently replaced some of the asbestos materials with vermiculite.

The claimant testified that as a result of his illness, at the time of arbitration, he could not climb a flight of stairs or walk more than one block. He remained in bed for up to 20 hours a day.

The claimant introduced medical evidence in the form of a letter and an evidence deposition of Dr. Mohyuddin. Dr. Mohyuddin testified that given the claimant's stated history of exposure to asbestos, it was more than likely that the exposure had caused the claimant's illness.

On cross-examination, Mohyuddin stated that there was a "good cause and effect relationship." On redirect, Mohyuddin testified that pulmonary fibrosis cannot be identified with one specific cause. Finally, he opined that the claimant's condition was permanent and could only worsen.

Following the introduction of this evidence, National presented the testimony of Gilbert Moss, a superintendent of the brick department for National from 1967 on, and Walter Creason, the salesman for one of National's suppliers of brick. Both men testified that asbestos products were not used in the plant from 1967 to 1973 to their knowledge. Creason identified one insulating brick used at National and testified that the brick contained no asbestos.

In rebuttal, the claimant testified that the brick identified by Creason was not the only insulating brick used. The bricks which the claimant believed were made of asbestos were a different type of brick used in addition to the one described by Creason.

Arbitrator Duty issued his decision on December 19, 1980, denying benefits. The arbitrator found that the claimant was exposed to the hazards of an occupational disease but that the evidence failed to prove that he contracted an occupational disease. This decision was appealed to the Commission.

At the hearing before the Commissioner, the claimant attempted to introduce the evidence depositions of five bricklayers, all employees at National. Each employee testified that he observed materials used in bricklaying that were made of asbestos. One of the five employees, Harry J. Brandt, also testified in his evidence deposition that the heat-protective clothing worn by the bricklayers contained asbestos. Arthur Evenden, another of the employees, testified that at times the dust from cutting the brick was so dense that it was difficult to see. Evenden stated he worked with the claimant under such conditions.

The introduction of the five depositions was objected to by National. The Commissioner sustained National's objection but allowed the depositions to come in as an offer of proof.

Following oral argument, the Commission affirmed arbitrator Duty's decision. The Commission noted that the 1971 Act excluded ordinary diseases of life to which the public was exposed. While asbestosis was specifically excluded from the category of ordinary diseases, the Commission continued, no doctor had diagnosed the claimant's condition as asbestosis. Therefore, the claimant's illness was not an occupational disease. The Commission found that the testimony of the five bricklayers was properly excluded for failure to show good cause for

not producing it at arbitration. The Commission concluded, however, that its decision would not have been changed had the testimony been admitted since the evidence had no bearing on whether the claimant suffered from an occupational disease. The claimant appealed.

In a memorandum order, the circuit court held that the Commission's decision was contrary to the manifest weight of the evidence and that the testimony presented by National was "patently erroneous." National appeals from this order reversing the Commission.

National raises three issues on appeal. National argues first that the circuit court erred in finding the Commission's decision was contrary to the manifest weight of the evidence. In a related argument, National asserts that as a matter of law, the aggravation of a pre-existing disease was not compensable under the Act at the time of the claimant's exposure. As its final issue, National argues that the Commission properly excluded the evidence depositions of the claimant's co-workers.

The Act, prior to amendment in 1975, provided, in relevant part:

> "(d) In this Act the term 'Occupational Disease' means a disease arising out of and in the course of employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable ***." (Ill. Rev. Stat. 1971, ch. 48, par. 172.36(d).)

Under the Act as it existed then an employee could not recover where the conditions of employment aggravated a pre-existing disease or hastened the development of an ordinary disease. *Rockford Transit Corp. v. Industrial Com.* (1967), 38 Ill. 2d 111, 230 N.E.2d 264.

However, even prior to the 1975 amendment to the Act, the fact that an employee's disease was an ordinary disease of life did not bar the employee from recovering. Instead, the Act was interpreted in *Allis-Chalmers Manufacturing Co. v. Industrial Com.* (1965), 33 Ill. 2d 268, 271, 211 N.E.2d 276, 278, to allow recovery where an employee's disease resulted from "exposure to hazards of a peculiar or unusual condition of work in a greater degree and in a different manner than the public generally ***." Where an employee is so exposed, the resulting disease is deemed to be an occupational disease.

In *Allis-Chalmers*, the employee contracted dermatitis as the result of constant exposure to a liquid coolant. The supreme court acknowledged that dermatitis was an ordinary disease of life. The court relied on significant evidence that the employee's dermatitis resulted from the repeated exposure to the coolant. Such exposure in the course of employment created a risk to the employee of contracting dermatitis far greater and in a different manner than the risk to the public. Con-

sequently, the court held that the dermatitis was an occupational disease.

The facts of the instant case are analogous to those in *Allis-Chalmrs*. The claimant testified at length regarding his exposure to asbestos materials. During Dr. Mohyuddin's 1979 deposition, counsel for National stated that asbestos had been used but had been discontinued during the seven or eight years prior to the deposition. Further, Creason and Moss' testimony did not and could not address the presence of asbestos from 1951 to 1967. Both arbitrators found that the claimant had been exposed to the hazards of asbestos. These findings were not reversed by the Commission. Finally, Dr. Mohyuddin testified consistently that it was strongly probable that the claimant's condition resulted from this exposure. This testimony was uncontradicted.

■■ Clearly, the claimant was exposed to asbestos. The claimant's exposure to asbestos created a risk of contracting pulmonary fibrosis which was greater than the risk to the general public. The claimant was also exposed to that risk in a manner different from the general public. In short, the claimant presented sufficient evidence to bring his lung disease squarely within the *Allis-Chalmers* definition of occupational disease.

Because we find that the claimant's condition of pulmonary fibrosis was an occupational disease, we need not address whether the pulmonary fibrosis was, in fact, asbestosis.

■■ We similarly need not review whether the circuit court erred in holding that the Commission improperly excluded the evidence depositions of the claimant's co-workers. As noted previously, both arbitrators found that the claimant was exposed to asbestos. The Commission found that the admission of these depositions would not have changed its decision. Because the claimant's exposure to asbestos was conclusively shown without the depositions, the circuit court's judgment is supported by the record even absent the depositions.

■■ Under the Act, the circuit court reviews all questions of law and fact presented by the record. (*Gray v. Industrial Com.* (1979), 76 Ill. 2d 552, 559, 394 N.E.2d 1153, 1156.) Neither the arbitrators nor the Commission addressed the legal question of whether the claimant's disease was compensable under the Act absent an explicit diagnosis of asbestosis. The circuit court reviewed all questions of law and fact in the instant case. The court properly concluded that the Commission's judgment was contrary to the manifest weight of the evidence.

The judgment of the circuit court of Madison County is affirmed.

Affirmed.

McNAMARA and KASSERMAN, JJ., concur.

PRESIDING JUSTICE WEBBER, dissenting:

I respectfully dissent from the majority.

Zupan claimed to have contracted asbestosis, nothing else, yet every diagnosis, including that of Dr. Mohyuddin, was that of pulmonary fibrosis. Dr. Mohyuddin, claimant's own physician, stated that there are many causes for the latter complaint and one cannot say what particularly caused it.

It is noteworthy that the claimant was retired in 1973 and first saw Dr. Mohyuddin in 1976. At that time there was no mention of asbestos. Asbestos came into the picture when the claimant again saw the doctor in 1978 and at that time, five years after his termination with the employer, maintained that he had been exposed to asbestos. Undoubtedly, based on this declaration, any physician would say that a "good cause and relationship" existed.

But is still remains that we have only claimant's own self-serving statement. He was unable to establish by a preponderance of the evidence that asbestos existed in his workplace. The Commission is the proper forum to resolve such an evidentiary question, and it did so adversely to the claimant. I can find no basis upon which to overturn that finding. The five affidavits were of some relevancy, but they are not persuasive.

*Allis-Chalmers Manufacturing Co. v. Industrial Com.* (1965), 33 Ill. 2d 268, 211 N.E.2d 276, cited in the majority opinion is of no assistance here. It requires that the claimant show an exposure at work in a greater degree and in a different manner from the public generally in order to convert an ordinary disease of life to an occupational disease. As mentioned above, this claimant was unable to satisfy his evidentiary burden in that respect.

The Commission properly ruled, in my opinion, that the claimant suffered from an ordinary disease of life. Under the statute in effect at the time of claimant's employment, such diseases were excluded from compensation with certain exceptions, including asbestosis. As with the Commission, it is my opinion that claimant did not establish a case of asbestosis. It stands the Act on its head to hold, as the majority does, that because a claimant is suffering from something he may be compensated by semantic gymnastics.

Claimant's medical proof failed and this is enough to doom his case, as it should.

I would reverse the circuit court and affirm the Commission. Justice Lindberg joins me in this dissent.