(No. 42847.—)
EMORY F. MEADE, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(W. T. GRANT Co., Appellee.)

*Opinion filed April 1, 1971.*

Elmo E. Koos, of Peoria, for appellant.

Robert C. Strodel, Assoc., of Peoria, (Arthur R. Kingery, of counsel,) for appellee.

Mr. Justice Davis delivered the opinion of the court:

By this appeal, the petitioner seeks the reversal of a judgment of the circuit court of Peoria County which affirmed the decision of the Industrial Commission and quashed the petitioner's writs of *certiorari* and *scire facias*. On September 19, 1967, the petitioner, employed by W. T. Grant Co. as a maintenance man, was servicing a conveyor belt when a fellow employee activated it and the petitioner's right hand was caught in the cogs of the machine that pulled the belt.

The petitioner suffered a compound fracture of the proximal end of the middle phalanx of the index finger, a compound fracture and contusion of the middle finger as well as a hemorrhage under its nail, and a contusion of the ring finger. There were no bruises or lacerations to either the thumb or little finger. The open wounds were sutured and a splint applied to the index finger.

Eight days later the petitioner returned to work. He received no additional treatment for his injury other than therapy prescribed by the physician who attended him in the hospital on the day of the injury. At the time of the hearing, the petitioner claimed that he experienced pain up to the elbow and that his hand was cold all of the time and his index finger stiff. He contended that because of the constant

pain in his index finger, he was unable to use his hand except "as a guide," and that he had no ability to "pick things up."

The arbitrator granted an award to the petitioner for 80% of the loss of use of his right hand, and the respondent employer filed a petition for review of the decision. The Industrial Commission modified the award of the arbitrator, reducing it to 100% loss of the use of the right index finger; 40% loss of use of the right middle finger; 20% loss of use of the right ring finger; and 10% loss of use of the right little finger. The petitioner then filed *praecipe* for writ of *certiorari* and *scire facias* in the circuit court and subsequently the respondent employer filed a motion to quash, which was granted.

The question involved in this case is whether the petitioner sustained a partial loss of use of his right hand as a consequence of the injury to his fingers.

Medical evidence was introduced through the testimony of two doctors and the medical report of a third doctor. Dr. Hart, the treating physician, testified that the petitioner had a compound comminuted fracture of the proximal end of the middle phalanx of the index finger, a contusion and compound fracture of the middle finger and a contusion of the ring finger, and that there were no bruises or lacerations to either the thumb or the little finger. The complete treatment consisted of the repair of the lacerations, the reduction of the fracture, and the application of the splint.

Dr. Hart further testified that he could find no organic reason for the petitioner's inability to move his fingers and thumb other than the index finger. A physical examination of the fingers showed them to be normal to inspection.

Dr. Diller's report of his examination and diagnosis of the petitioner's condition was entered into evidence without objection by the respondent. Dr. Diller saw the petitioner twice. His diagnosis found "practically a complete ankylosis of the interphalangeal joints of the index finger, and a limitation of flexion of the metacarpo-phalangeal finger, and a

limitation of flexion of the metacarpo-phalangeal joint to 85 degrees, in addition to atrophy of the soft tissues." It further revealed "a lateral deviation of the index finger at the proximal interphalangeal joint, with a transverse, pink scar, ¾" long, on the dorsal aspect of the index finger, over the proximal inter-phalangeal joint," and "a limitation of flexion of all the interphalangeal joints of the middle, ring, and little fingers, in addition to 20 degrees loss of flexion of the metacarpo-phalangeal joints of the middle, ring and little fingers."

A lateral X-ray examination revealed a healed fracture of the shaft of the middle phalanx of the index finger and osteoporosis of the phalanges of all of the fingers. He concluded his report by stating that in his opinion the petitioner should have "a substantial, permanent, partial loss of use of the right hand as a result of the injury."

Dr. Canterbury, who testified for the respondent, stated that he believed there was no doubt that the petitioner was exaggerating his disability. He found callouses in the bases of the long, ring, and little fingers, which indicated that the petitioner had been using his hand, at least to the extent of flexing his fingers, against some objects. X rays showed no bone abnormality of these fingers, normal contour of the bones, and no evidence of osteoporosis, except for the index and distal portion of the second metacarpal joint.

Two cases, with similar facts, are determinative of the issue involved in this case. In *Sykes Co. v. Industrial Com.*, 314 Ill. 326, we held that the amputation of four fingers did not constitute loss of the use of the hand, but was compensable only at the statutory rate for the loss of four fingers. At pages 328 and 329, we stated: "The only question involved in this case is whether or not by the accident in question defendant in error sustained a complete loss of the use of his left hand. While the incapacity to use need not be tantamount to an actual severance of the hand, yet to sustain a judgment for the complete loss of the use of the hand the

evidence must show that the normal use of the hand has been entirely taken away. *Mark Manf. Co.* v. *Industrial Com.* 286 Ill. 620; *Ballou* v. *Industrial Com.* 296 id. 434.", and held that the evidence failed to show a complete loss of use of the petitioner's hand.

In *Poray, Inc.* v. *Industrial Com.*, 381 Ill. 251, the second, third and fourth fingers of the petitioner's left hand were amputated at the middle interphalangeal joint, and the left index finger was amputated at the distal phalangeal joint. There was no injury to the palm or back of the hand or thumb. At page 255, we stated: "If an award in a case like the present one can be made for the loss of use of a hand, then the definite and specific compensation awarded by the statute for loss of fingers would be meaningless, because in each instance the loss or amputation of a portion of any finger results in some loss to the use of the hand itself."

In the case at bar, the injury to the petitioner was not so serious as to require amputation of his hand. Moreover, there was no injury to either the palm, back of his hand, or the thumb, and he retained the use of the hand except for such impairment as necessarily resulted from the loss of use of his fingers. The evidence failed to show any loss of use of the hand other than the disability due to the injured fingers.

The petitioner contends that the Industrial Commission's reversal of the arbitrator's award was against the manifest weight of the evidence. We do not agree.

As is often true in compensation cases, there was a conflict of medical testimony. In *Owens-Illinois Glass Co.* v. *Industrial Com.*, 39 Ill.2d 312, at page 316, we stated: "We have repeatedly stated that we will not substitute our judgment on factual questions for that of the Commission [citation]; that it is the function of the Commission to determine the facts and to draw reasonable inferences and conclusions from the evidence and that the function of this court is

limited to a determination of whether the Commission's findings are against the manifest weight of the evidence [citations]; that determination of disputed questions of fact, including the nature and extent of the disability as well as the matter of causal connection, is primarily a function of the Commission [citation]; and that where the evidence is conflicting, or of such a nature that different inferences may be reasonably drawn therefrom, we will not discard permissible inferences drawn by the Commission merely because it or we might have drawn other inferences from the facts." This rule of law applies in the case at bar, and since substantial, competent evidence appears in the record supporting the award of the Industrial Commission, which modified the arbitrator's award, the finding of the Commission will not be disturbed by this court.

The petitioner has asserted a constitutional question in his brief with reference to the action of the Industrial Commission in modifying the arbitrator's award of partial loss of use of the petitioner's hand to an award of loss of use of his fingers. To the best of our understanding, he argues that two different standards of evidence are utilized, dependent upon whether additional evidence is offered before the commission: "If the award is modified, then the Arbitrator must, on review before the Circuit Court, be indulged with having found to a preponderance; if the award is reversed, the Arbitrator must have been found in his result, without sufficient evidence, or in view of additional testimony, the burden on the part of the Respondent has overcome the original preponderance." He contends that this procedure violates the common-law rules of evidence, and, in particular, the burden of proof applicable to personal injury suits requiring that the claimant prevail by a preponderance of the evidence.

The jurisdiction of the Commission to review the evidence taken before the arbitrator and to consider any further evidence properly presented to it is original as opposed to

appellate jurisdiction. Such a review is neither a trial *de novo* nor simply a review of the record, but is *sui generis.* The award of the arbitrator becomes final by its entry upon the records of the Commission if it is not contested. If it is contested before the Commission, the jurisdiction of the Commission to review is original jurisdiction.

Likewise, the Commission is not bound by any findings of the arbitrator regardless of whether it hears additional evidence or simply reviews the record. (*Rodriguez* v. *Industrial Com.,* 371 Ill. 590, 593.) The burden-of-proof standards before the Commission are no different than those imposed on the arbitrator. It is not until the case is before the circuit court that the standards applicable to reviewing bodies are invoked. Thus, the petitioner's argument that he is denied equal protection of law is without merit.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*