(No. 45447.

LLOYD LEASON, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Hyster Company, Appellee.)

*Opinion filed October 1, 1973.—Rehearing denied Nov. 28, 1973.*

BAYLER & NOETZEL, of Peoria (HENRY D. NOET-ZEL, of counsel), for appellant.

McCONNELL, KENNEDY, McCONNELL & MOR-RIS, of Peoria, for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

This is a direct appeal under our Rule 302(a) (50 Ill.2d R. 302(a)) by the claimant, Lloyd Leason, from a judgment of the circuit court of Peoria County, which affirmed a decision of the Industrial Commission holding that the claimant had not established his claim of permanent disability under the provisions of the Workmen's Compensation Act. Ill. Rev. Stat. 1967, ch. 48, par. 138.8(f).

An arbitrator of the Commission had found that Leason had sustained accidental injuries arising out of and in the course of employment and had entered an award for total temporary compensation. He further found that the claimant had failed to prove any permanent disability for which compensation was payable under the Act. After hearing additional evidence the Industrial Commission had confirmed the arbitrator's award.

In July, 1967, Lloyd Leason had worked for the Hyster Company, the respondent, for over 20 years. He

was 50 years old and had been a heat treat operator for the previous 18 years. As a heat treat operator, he would load 28-pound metal grills on racks. When 1500 pounds of grills had been loaded on the rack it would be pushed into a furnace and heated to 1700 degrees. The rack then would be lowered into quenching oil, causing bursts of smoke and hot gas. When the rack was withdrawn the claimant would be exposed to escaping heat and smoke from the furnace and grills. This treating process was repeated hourly.

The claimant was told in 1964 that he had pulmonary emphysema, but he had been performing this specific duty for approximately three years before the accident and had not lost any time from work because of any illness for six months prior to July 11, 1967.

On July 11, he was called into work to help in cleaning a combustion furnace used in heat treating that had been damaged by fire. In extinguishing the fire, the Peoria Fire Department had used various chemicals, whose residue remained in the furnace and on 1500 gallons of oil in it. When the claimant first attempted to clean the furnace the particles from the residue burned his eyes and nose. That prompted the respondent to rent an oxygen mask for the claimant's protection. Later that day when the claimant reported for his usual shift, he was ordered to remove about a foot of oil from the pit at the bottom of the furnace which pumping had not removed. His supervisor informed him that an oxygen mask was not available for him to use. After working for approximately 45 minutes, the claimant became unconscious and awakened in St. Francis Hospital where he was treated for respiratory collapse. There he complained of difficulties with his vision, hearing and breathing. In addition he suffered from chest pains and dizzy spells. After three days of receiving oxygen and other treatment he was discharged. At home, his condition remained about the same; oxygen had to be administered on four separate occasions during the month of July.

In October, the claimant returned to work as a heat treat operator but after a few hours he began to choke because of the fumes, coughed excessively and experienced difficulty in breathing. He was given oxygen and sent home. He remained home for a few days and on his return to work was assigned to the gear department where he experienced similar symptoms and was sent home. Claimant again returned to work and was assigned to operate a grinder. This was less strenuous and was not near the heavy smoke and severe heat of the heat treat furnace and the gear departments, but again the claimant experienced severe coughing, became dizzy and had to return home after working a few hours. After other unsuccessful attempts to return to work as a grinder operator he was assigned to an outside job filling orders and lifting small parts. However, upon lifting even small parts he suffered coughing spells, became dizzy and had to leave the plant.

The claimant, who had an eighth-grade education, was next assigned as a storetender. This was basically a janitorial job which required no lifting, and he was located away from the fumes of the main shop area. However, his duties required him to come into contact with fumes, dust or smoke, and the symptoms returned, requiring the administration of oxygen on one occasion. He remained at this job until going on sick leave five weeks prior to the arbitration hearing.

The only witnesses at the hearing before the arbitrator were the claimant, Dr. Robert Rutherford and Dr. Paul Palmer. The parties stipulated that the claimant had sustained an accidental injury on July 11, 1967, that had arisen out of and in the course of his employment. (In *International Harvester Co. v. Industrial Com., 56 Ill.2d 84,* which also has been decided this term, the employer contested whether the employee, who had been disabled by emphysema, had proved that he had suffered an accidental injury arising out of and in the course of his employment.)

Dr. Rutherford, a specialist in internal medicine, testified that he first examined the claimant in June of 1968, and that in December of 1968 he referred him to the Proctor Hospital for pulmonary tests and therapy. He testified that three previous pulmonary function tests had been done in 1964, 1967 and 1968 and that all four tests showed that claimant suffered from chronic emphysema and chronic obstructive bronchitis. He said that the test results had been uniform and no change in his ability to work or in his condition had been shown, but he admitted that these tests were administered in the hospital under ideal conditions and that the presence of smoke or gasses would make a difference were an individual sensitive to them. Furthermore, he stated that while it is important to know the conditions under which the tests are given in order to appraise the results, he did not administer the three earlier tests and did not know their surrounding conditions.

Dr. Palmer, who is an industrial physician, testified that he first treated the claimant in 1964 for pulmonary emphysema. He said that he treated the claimant on July 11, 1967, at St. Francis Hospital for respiratory collapse, which apparently had been caused by fumes inhaled while the claimant had been cleaning a pit. The witness was of the opinion the claimant's inability to return to his job was due to the underlying pulmonary emphysema and not to the accident on July 11, 1967. However, when asked what effect the accident had on the claimant's emphysema he said the claimant certainly had sustained a lot of irritation from the incident. The witness then stated: "I have no way of knowing whether it did accelerate his condition or not accelerate his condition. At this time I have no way of knowing. However, we know upper respiratory infections or episodes with contaminated air, such as dust or fumes, certainly cause the condition to become reactivated, and whether it makes it progressive or not, I don't know."

On September 25, 1969, the arbitrator found the

claimant had sustained accidental injuries arising out of and in the course of employment and entered an award for 23 weeks of temporary total disability, but he found that the petitioner failed to prove any permanent disability as a result of the accident. A petition for review was filed with the Industrial Commission by the claimant on December 2, 1969, but for some reason not disclosed by the record the hearing before the Commission was delayed. The Commission handed down its decision in June 1971.

The testimony of the claimant before the Industrial Commission was that he returned to his job as a storetender on October 6, 1969. This work, which was performed between the arbitration hearing and the hearing on review, produced, he said, dizziness, weakness and coughing, and he often required oxygen. He even found difficulties when attempting to walk up the stairs, he testified.

Beginning in February, 1970, his condition rapidly deteriorated. He said he weighed 150 pounds at the time of the accident and by August, 1970, his weight was 123 pounds. He was unable to work between February 9 and April 6, 1970, and between April 21 and August 17. He worked intermittently between August 17 and August 31 when he was told by Dr. Palmer, who had consulted with Dr. Bugaieski, that because of his condition he could not continue his employment with the respondent in any capacity. At this time, he testified, he was told by Dr. Palmer to go to the Social Security offices and file a claim for 100% disability.

Dr. Bugaieski, a specialist in diseases of the chest, testified for the claimant before the Commission. He testified that he first had treated the claimant for pulmonary emphysema in December of 1968 at the request of the respondent. Replying to a hypothetical question asking whether the accident here could have aggravated or accelerated the claimant's condition, the witness testified that in his opinion the accident would

have aggravated and may have accelerated the condition. He based this on the fact that the claimant's symptoms of exacerbation had become more frequent since the accident. The physician placed significance, too, on the fact that prior to the accident the claimant was able to work 8 and as much as 12 hours a day at his heat treating assignment, but thereafter at the presence of fumes he would gag, choke and become dizzy. These symptoms persisted even when the claimant was working as a storetender. The witness said that "whatever happened to his lungs during this episode was contributory" to his condition. Dr. Bugaieski said that from the claimant's post-accident history he had no reason to believe that the repeated episodes of choking and the like would not continue and that was why he had advised the claimant to quit work.

The respondent did not offer any evidence at the hearing before the Industrial Commission.

The contention of the claimant on this appeal is that the decision of the Industrial Commission was contrary to the manifest weight of the evidence. He does not contend that necessarily the arbitrator was in error. At the time of arbitration there was some hope, he says, that he might be able to work and, therefore, the arbitrator could have concluded that although he was totally disabled as of the time of the hearing, it was a temporary and not a permanent condition. There was a long interval between the arbitrator's hearing and that conducted by the Commission and, as the evidence before the Commission showed, it is argued, the disability of the claimant is a permanent one attributable to the accident of July 11, 1967.

However, we would observe that the question appearing is whether the disability was caused from the accident. The disability itself is not in question.

It is appropriate to note some of the holdings of this

court under the Workmen's Compensation Act which are pertinent here.

First, it is axiomatic that "questions of fact are primarily for the Commission to decide and that its findings will only be disturbed on judicial review if they are against the manifest weight of the evidence. [Citations.] " *Lewandowski v. Industrial Com., 44 Ill.2d 204, 206.*

That an employee had a pre-existing illness does not of itself preclude an award under the Act. We said in *Corn Products Co. v. Industrial Com., 51 Ill.2d 338, 340*: "An employee is entitled to recover for all the consequences attributable to an aggravation of a pre-existing condition." In *Marsh v. Industrial Com., 386 Ill. 11, 13-14,* it was stated: "It is well settled that the Workmen's Compensation Act is not limited in its application to healthy employees. Where one sustains an accidental injury which aggravates a diseased condition, or where, in the performance of his duties and as a result thereof, he is suddenly disabled, an accidental injury is sustained even though the result would not have obtained had the employee been in normal health."

The accident during employment need not be the only cause of the employee's disability. We said in *Republic Steel Corp. v. Industrial Com. (1962), 26 Ill.2d 32, 45*: "He [the employee] need not prove it [his employment] was the sole causative factor nor even that it was the principal causative factor, but only that it was *a* causative factor in the resulting injury." Other holdings illustrating this include: *Ford Motor Co. v. Industrial Com. (1972), 50 Ill.2d 267, 271; Rock Road Construction v. Industrial Com. (1967), 37 Ill.2d 123, 128; Shell Oil Co. v. Industrial Com. (1967), 38 Ill.2d 286, 287.*

The Industrial Commission is not bound by the findings of the arbitrator. (*Rodriguez v. Industrial Com., 371 Ill. 590.*) New or further evidence may be presented to

the Commission. (*Mead v. Industrial Com., 48 Ill.2d 215; Gregory v. Industrial Com., 310 Ill. 409.*) When new evidence is given the Commission must consider it. (*Brink v. Industrial Com., 368 Ill. 607, 610.*) The Commission shall consider all of the evidence which has been presented to it and to the arbitrator in reaching a decision. *Meade v. Industrial Com., 48 Ill.2d 215, 220-221.*

Measured against these standards we judge that the finding made by the Industrial Commission was contrary to the manifest weight of the evidence.

It was stipulated that the claimant had sustained an accidental injury arising out of and in the course of his employment. That the claimant was permanently disabled is not challenged. Dr. Palmer, the respondent's industrial physician, told the claimant to file a total disability claim with the Social Security Administration. His employment with the respondent was terminated because of his inability to perform any character of duty.

Dr. Bugaieski testified, and without contradiction, that the accident had aggravated the claimant's condition. He said that "whatever happened to his lungs" in the accident contributed to the claimant's disability. After the accident the disabling symptoms of coughing and choking became more frequent and persisted even when the claimant was not exposed to irritating fumes. Before the accident the claimant was able to perform his heat treating duties as much as 12 hours a day. Thereafter he was unable to work even as a storetender. He suffered a dramatic weight loss. Consideration of this evidence was proper. In *Plano Foundry Co. v. Industrial Com., 356 Ill. 186, 198-9,* it was observed: "Proof of the state of health of the employee prior to and down to the time of the injury, and the change immediately following the injury and continuing thereafter, is competent as tending to establish that the impaired condition was due to the injury. (*American Liability Ins. Co. v. Industrial Com.*)"

In contrast to the testimony of Dr. Bugaieski the

witnesses for the respondent were indefinite and qualified as to the medical consequences of the accident.

Dr. Palmer admitted that he did not know whether the accident affected the employee's condition. And he did acknowledge that the exposure to the fumes could affect his condition.

Dr. Rutherford acknowledged that the pulmonary tests were conducted under ideal hospital conditions and that the presence of smoke or gasses would have made a difference in the testing of a person sensitive to these irritants.

Considering the entire record, and in particular the testimony of Dr. Bugaieski and the claimant, we judge that the evidence showed that the admitted accident contributed to the claimant's disability.

For the reasons given, the judgment of the circuit court of Peoria County is reversed and the cause is remanded to the Industrial Commission with directions to enter an award for permanent and total disability.

*Reversed and remanded, with directions.*