(No. 45706.

TOM WADE, Appellant, v. THE INDUSTRIAL COMMIS-
SION *et al.*—(Westinghouse Electric Co. *et al.*, Appel-
lees.

*Opinion filed November 30, 1973.*

HANAGAN, DOUSMAN & GIAMANCO, of Mt.
Vernon, for appellant.

KEEFE & DE PAULI, of East St. Louis, for appellees.

MR. JUSTICE WARD delivered the opinion of the
court:

This is a direct appeal under our Rule 302(a) (50
Ill.2d R. 302(a)) by the claimant, Tom Wade, from a

judgment of the circuit court of St. Clair County affirming a holding by the Industrial Commission which *inter alia* denied Wade's claim for compensation under the provisions of the Workmen's Compensation Act (Ill. Rev. Stat. 1967, ch. 48, par. 138.8(d)) for a skull fracture resulting from surgery and for accompanying medical services.

An arbitrator of the Commission had found that Wade had sustained an accidental injury arising out of and in the course of employment and had entered an award for permanent and total compensation for the permanent loss of hearing in his right ear, for temporary compensation and for $47 in medical expenses. He further found that the claimant had failed to prove that the accident caused an aggravation of a pre-existing condition, which necessitated surgery. The Industrial Commission confirmed the arbitrator's award.

The employer, Westinghouse Electric Co., did not appeal from the portion of the circuit court's judgment in the claimant's favor.

The question presented to us is whether the finding of the Industrial Commission denying an award for the surgically caused skull fracture was contrary to the manifest weight of the evidence.

On April 16, 1970, while Tom Wade was welding the inside of a tank, sparks flew back into his right ear causing extreme pain. The claimant testified he left the tank and rested for about forty minutes. When the pain subsided he resumed his work in the tank.

A few days later his ear began to drain but he did not experience any pain at that time. The draining continued without pain until May 16, when his inner ear swelled and closed and he began to suffer pain. The pain increased and on May 21, about five weeks after the injury, he reported the accident to his employer. He was directed to St. Elizabeth's Hospital in Granite City for treatment and there he was referred to Dr. Lindsay Pratt at Barnes Hospital, St. Louis.

On his examination on May 21 Dr. Pratt found debris and pus in the claimant's right ear, which he described as due to an infection. He also found that the claimant might have a cholesteatoma, a type of tumor, in the ear. Dr. Pratt found on the claimant's second visit to him on May 28 that the ear was healing and the inflammation subsiding. However, when tests were later conducted it was determined that Wade had suffered almost a complete loss of hearing in his right ear. On June 4 the claimant returned for treatment and complained of dizziness and pain behind the ear. His next visit was on June 18 when Dr. Pratt concluded that the claimant had a cholesteatoma and that a mastoidectomy might be required. This surgical procedure involves a cleaning of the mastoid air cells and removal of diseased tissues. In the procedure there must be a surgical removal of temporal bone of the skull known as the mastoid process. On later visits on July 15, July 20, and July 23 to Dr. Pratt the claimant complained of dizziness and on August 4, a radical mastoidectomy was performed. This involved, as has been stated, a surgical fracture of the skull.

The claimant testified before the arbitrator that prior to the accident on April 16 he had suffered from a loss of hearing in his right ear, but that he was able to hear normal conversations. He had this impairment since childhood, he said. He testified that after the accident he experienced a steady loss in his hearing ability which progressed to a complete loss of hearing in his right ear by the time he underwent surgery.

The claimant's wife, Sandra Wade, simply testified that prior to the accident she had not observed any evidence of loss of hearing in her husband's right ear and told of the drainage of his ear after the accident.

The deposition of Dr. Pratt, who specializes in diseases of the ear, nose and throat, was admitted into evidence in behalf of the claimant. Dr. Pratt stated that the claimant had suffered an almost complete loss of hearing in his right

ear. He said that his initial examination of the claimant indicated the presence of a cholesteatoma. He further testified that the surgery was performed to remove the cholesteatoma and to avert the possibility of more serious central complications, as meningitis, facial paralysis, and thrombosis.

Dr. Pratt testified that the claimant's accident could not have caused the cholesteatoma and that the cholesteatoma was a pre-existing condition. He said that a cholesteatoma does not develop in two or three weeks but only over a period of years. The physician testified that while exposure to cold, water in the ear, or hot sparks possibly could have aggravated the cholesteatoma, he doubted the sparks from the accident could have caused any aggravation of the cholosteatoma because it was shielded by debris in the claimant's external ear canal. Too, he was of the opinion that had the sparks been an aggravating agent the claimant would have suffered pain and an inflammatory condition immediately, not some weeks later. On cross-examination Dr. Pratt said he could not state that the flare up of the cholesteatoma was a result of the accident.

It has become axiomatic that the determination of factual questions is primarily for the Industrial Commission and that its findings will not be set aside unless they are contrary to the manifest weight of the evidence. *Orr v. Industrial Com., 47 Ill.2d 242, 243; Cushing v. Industrial Com., 50 Ill.2d 179, 181, 182.*

In *Owens-Illinois Glass Co. v. Industrial Com., 39 Ill.2d 312,* at page 316 we observed that "[the] determination of disputed questions of fact, including the nature and extent of the disability as well as the matter of causal connection, is primarily a function of the Commission [citation] ; and that where the evidence is conflicting, or of such a nature that different inferences may be reasonably drawn therefrom, we will not discard permissible inferences drawn by the Commission merely because it or we

might have drawn other inferences from the facts." See also *Dattilo v. Industrial Com., 37 Ill.2d 390, 391; Meade v. Industrial Com., 48 Ill.2d 215, 219, 220.*

Measuring by these standards, and considering the entire record and in particular the testimony of Dr. Pratt, we cannot say the finding of the Industrial Commission as to the question on appeal was contrary to the manifest weight of the evidence.

The claimant also contends that he was entitled to an award covering his total medical expense. The Industrial Commission erred, he says in allowing only the medical expenses relating to the infection. To support this he quotes from our holding in *Quick v. Industrial Com., 53 Ill.2d 46,* "Having allowed the employee temporary total disability compensation for the period of time he was hospitalized for surgery, it was inconsistent for the Industrial Commission not to also allow medical expenses for the surgery."

However in *Quick* there was a causal connection demonstrated between the permanent condition in the claimant's right shoulder and the accident he suffered (*Quick v. Industrial Com., 53 Ill.2d 46, 48*), and the claimant received temporary total disability compensation for the period in question. Here no causal connection was established by the claimant between the accident and the fracture and he was not awarded temporary total disability compensation for the period covering his surgery.

For the reasons given, the judgment of the circuit court of St. Clair County is affirmed.

*Judgment affirmed.*