(No. 55685.—

THE CITY OF STREATOR *et al.*, Appellants, v. THE INDUSTRIAL COMMISSION (Patricia Lamagno *et al.*, Appellees).

*Opinion filed October 22, 1982.*

354

RYAN, C.J., took no part.
SIMON, J., specially concurring.

Matthews, Dean, Eichmeier, Simantz & Hem, P.C., of Aurora (Roger W. Eichmeier and Stuart L. Whitt, of counsel), for appellants.

Peter F. Ferracuti & Associates, of Ottawa (Stephen J. Heine, of counsel), for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

An arbitrator for the Industrial Commission found that while employed by respondent, the city of Streator, Ronald Lamagno sustained accidental injuries which caused his death. He awarded workmen's compensation to petitioners, Patricia Lamagno, decedent's widow, and to Carl Lamagno, decedent's father, on behalf of decedent's five minor children by prior marriages. The petitioner-widow was awarded compensation in the amount of $112 per week for 1,248 weeks and $44 for one week. The arbitrator, finding that decedent was under a legal obligation to support the five minor children he left surviving him, awarded them the maximum compensation for a fatal injury allowable under the Workmen's Compensation Act. (Ill. Rev. Stat. 1977, ch. 48, par. 138.8.) On review the Industrial Commission affirmed the award. On *certiorari* the circuit court of La Salle County confirmed, and respondent appealed pursuant to Supreme Court Rule 302(a). 73 Ill. 2d R. 302(a).

It was stipulated that on May 14, 1978, decedent, while in the course of his employment as a fireman, suffered an accidental injury to his back. The testimony shows that he was hospitalized from that date until June 2, 1978. He continued to seek and receive medical care over the following weeks and was last examined by a physician on July 6, 1978. On July 15, 1978, the body of decedent was found lying in his automobile, which was parked in the garage of his home. He had apparently died from carbon-monoxide poisoning, and his death was considered a suicide. Decedent had not returned to work since his injury on May 14, 1978.

At the hearing before the arbitrator, petitioners offered into evidence the depositions of two physicians

taken by respondent. The deposition of Dr. James Gottemoller, decedent's family physician, was taken August 9, 1979. He stated that on May 5, 1978, he admitted decedent to St. Mary's Hospital in Streator for a condition he diagnosed as anxiety neurosis with hyperventilation. Decedent was discharged May 7, 1978. Dr. Gottemoller testified that his medical history showed that approximately eight or nine years prior to this incident decedent had marital problems, and during that time was "in the hospital a couple of times under similar circumstances." Dr. Gottemoller's next contact with decedent was on May 14, 1978, at which time he was admitted to the emergency room at St. Mary's Hospital. Dr. Gottemoller examined decedent the next day at the hospital, at which time he was complaining of severe back pain suffered as the result of trying to open a fire hydrant the previous day. Dr. Gottemoller performed a straight-leg-raising test on decedent and found that his responses to the test were exaggerated. At the time of the examination, Dr. Gottemoller noted in his records that decedent had historically been a high-strung, emotional, nervous individual. Dr. Gottemoller concluded from his examination that decedent had suffered a back injury, the nature, cause and extent undetermined at that point in time. On May 16, 1978, Dr. Gottemoller referred decedent for treatment to Dr. Dennis Garwacki, a neurologist, and decedent was transferred to St. Francis Hospital in Peoria. Decedent was transferred back to St. Mary's Hospital on May 18, 1978, where he remained hospitalized until his discharge on June 2, 1978. Dr. Gottemoller stated that during this time, possibly with the exception of May 18, he was in contact with decedent every day. Following decedent's discharge, Dr. Gottemoller again examined him on June 13, 1978, at which time he complained of stiffness and mild pain. On June 21, 1978, Dr. Gottemoller again saw decedent, who indicated that he was still hav-

ing some back pain and tired easily. Dr. Gottemoller noted that decedent was gaining weight and recommended that he commence exercises, including walking and jogging on a daily basis. On June 22, 1978, decedent complained of a sore left rib. In his records Dr. Gottemoller noted "reassurance," which, according to Dr. Gottemoller, indicated that the patient needed reassuring that there was no difficulty such as heart or lung problems. On June 28, 1978, Dr. Gottemoller again saw decedent, at which time decedent said that he was stiff and that he thought the exercise was making him worse, but assured Dr. Gottemoller that he had been exercising daily. At this time decedent asked to be referred to Dr. Kenneth Bussey, an orthopedic surgeon at the Christie Clinic in Champaign. Dr. Gottemoller made the referral and did not see decedent again. During direct examination Dr. Gottemoller was asked a hypothetical question as to whether, based on a reasonable degree of medical certainty, he had an opinion whether or not the injury of May 14, 1978, would have or could have caused a condition in decedent which would cause him to commit suicide. After indicating that he had no such opinion, the doctor stated, "Maybe he committed suicide because his mother didn't like him. Maybe he committed suicide because he had the backache. Maybe he committed suicide because he had a fight with his parish priest. Maybe he committed suicide because of his marital difficulties. I do not know." On cross-examination Dr. Gottemoller indicated that if decedent had experienced severe pain, the pain could have contributed to his suicide.

Petitioners also offered into evidence the deposition of Dr. Dennis Garwacki, a neurologist, taken on July 18, 1979. Dr. Garwacki examined decedent at St. Francis Hospital in Peoria on May 16, 1978, and found muscle spasms of decedent's lumbar muscles. Dr. Garwacki found that decedent was overreactive in his responses to

minimal movement and stated that reclining seemed to cause him severe pain. Overall, decedent complained of severe lumbar pain, and Dr. Garwacki's impression was that decedent suffered acute lumbosacral strain. Based on this diagnosis Dr. Garwacki prescribed a conservative course of treatment, including pain medication, muscle relaxants, and physical therapy. When asked a hypothetical question similar to that asked of Dr. Gottemoller concerning the cause of suicide, Dr. Garwacki indicated that he could express no such opinion. Dr. Garwacki stated that decedent had tended to be very emotional in his outbursts and considered this was important in order to understand the personality of decedent. Dr. Garwacki stated that due to the wishes of decedent and his family, decedent was transferred back to St. Mary's Hospital on May 18, 1978. Dr. Garwacki had no further contact with him.

Petitioners also offered into evidence the deposition of Dr. Kenneth Bussey, taken by petitioner on June 20, 1979. Dr. Bussey, an orthopedic surgeon, examined decedent at the Christie Clinic in Champaign on July 6, 1978, at which time he complained of pain radiating down into his left leg to the knee when he was in a sitting position. He complained that this pain increased if he coughed or sneezed or rode in an automobile. During this examination Dr. Bussey observed that decedent experienced some mild pain when bending forward and laterally. An examination of X-ray films taken of the lumbosacral region of decedent's spine showed a spondylolysis, a defect in a portion of the vertebrae, which the doctor considered developmental in origin. Dr. Bussey stated the significance of the finding of spondylolysis was that a patient suffering from this defect was more likely to rupture a disk than someone in the normal population. He stated that the injury of May 14 could have aggravated the spondylolysis and said that he could not rule

out definitely the presence of a herniated disk. Dr. Bussey recommended that decedent be fitted with a lumbosacral corset and return for consultation in one month. Dr. Bussey never again saw decedent. No hypothetical question concerning the cause of suicide was posed to Dr. Bussey.

Patricia Lamagno, decedent's widow, testified that she and decedent were married on May 8, 1974. Mrs. Lamagno described decedent's personality prior to May 14, 1978, as very outgoing and his condition of health prior to that time as excellent. She stated that prior to May 14, 1978, she did not notice that decedent had any complaints with respect to his back. Mrs. Lamagno testified that, after the back injury suffered on May 14, decedent complained constantly about the pain in his back and that decedent's physical activity decreased. She said that he could not sit and that he basically remained lying down or in a standing position. Mrs. Lamagno testified that, approximately a week and a half to two weeks prior to decedent's death, she and decedent separated and she moved out of the family residence. She stated that she had seen an attorney about getting a separation from decedent. She said that although she and decedent were living separately they were living "back and forth" between the two residences. On July 14, 1978, Mrs. Lamagno returned to the family residence to prepare to attend with decedent the wedding and reception of his sister, which were to take place that evening. That afternoon Mrs. Lamagno and decedent had sexual intercourse. Mrs. Lamagno attended the wedding and reception with decedent, and during the course of the evening noticed that decedent was not very talkative or active, and that he had only one or two alcoholic drinks. After the reception Mrs. Lamagno drove decedent and his children to the family residence and then drove herself and her daughter to their residence. Decedent later stopped

by her residence to pick up the clothes of one of his daughters. The next morning, July 15, 1978, Mrs. Lamagno went to the family residence and could not find decedent in the house. She then went to the garage and found decedent's body lying in the front seat of his automobile. Decedent was dressed in the same suit he had worn to the wedding. Mrs. Lamagno went in the house and called Carl Lamagno, decedent's father, and an ambulance. Mrs. Lamagno then went to decedent's bedroom and on the dresser found two notes allegedly written by decedent, one of which she destroyed, and the other was given to the La Salle County coroner. Mrs. Lamagno stated the notes had not been on the dresser when she was in the bedroom the previous day. Over respondent's objection the remaining note was admitted into evidence. The note reads as follows:

"Dear Pat

I love you and Tonya and the other kids. My parents and Carl and Art. I hope no one will be mad at me. But do [sic] to my pains and back trouble my ups and downs there is no way to go on. I really love everybody and I hope they will forgive me. The 74 Cad is yours and my pension from the firehouse.

I hope you will help take care of everything seen [sic] you know where everything is. I will always love you deeply and all of the others to [sic].

Love you all.

Ronnie"

No medical testimony was presented concerning the cause of decedent's death, but it was stipulated that his body had an extremely high level of carbon monoxide.

The arbitrator found that decedent sustained accidental injuries arising out of and in the course of his employment with respondent on July 15, 1978, and on review the decision of the arbitrator was affirmed by the Industrial Commission. The circuit court of La Salle County found that "the suicide of Ronald Lamagno, 15 July, 1978, was not an intervening cause between the date of the injury of May

14, 1978, and his death, but was rather an intervening act; an intervening cause being one occurring entirely independent of the prior cause. The suicide was part of an unbroken chain of events from the injury to the death; therefore the suicide was an accidental injury within the meaning of the Workmen's Compensation Act of the State of Illinois compensable thereunder. That the findings of the Industrial Commission and the arbitrator, as stated above, are not contrary to the manifest weight of the evidence and that the transcript clearly shows evidence from which said decision would reasonably be inferred and concluded." The circuit court confirmed the award, and respondent appealed.

Respondent contends that because there was no evidence of any causal connection between decedent's back injury and his subsequent suicide the Industrial Commission's decision that decedent's suicide arose out of and in the course of his employment was both contrary to the manifest weight of the evidence and erroneous as a matter of law. Relying primarily on the decisions in *County of Cook v. Industrial Com.* (1981), 87 Ill. 2d 204, and *Harper v. Industrial Com.* (1962), 24 Ill. 2d 103, respondent submits that it was the claimants' burden to prove by competent evidence that without the compensable back injury there would have been no suicide. Respondent contends that unlike the situations in *County of Cook* and *Harper* there was no evidence here that as a result of the injury the decedent suffered great pain and severe chronic depression sufficient to drive him to suicide. Respondent points out that decedent received conservative treatment for his back injury and argues that the evidence shows that the treatment reduced his level of pain. Respondent emphasizes that the three physicians who treated decedent for his back condition were unable to express any opinion based on a reasonable degree of medical certainty that his back injury of May 14, 1978, had any causal connection with his subsequent suicide. Respondent notes decedent's early medical

problems when confronted with marital discord and contends that the fact that decedent and his wife had sexual intercourse prior to attending the wedding and reception on July 14, 1978, and their dancing, drinking and socializing at the reception contradict a finding that decedent was suffering from great pain and severe chronic depression sufficient to drive him to take his own life. Respondent also argues that the alleged suicide note should have been excluded from evidence as inadmissible hearsay. Respondent points out that the note was undated and found on the dresser in decedent's upstairs bedroom rather than in close proximity to his body, which was discovered in the garage. Respondent also complains that the purported suicide note was but one of two notes discovered on the dresser, and that while this one was delivered to the coroner, the other was destroyed by Mrs. Lamagno. Respondent further contends that because there was an absence of expert medical testimony linking decedent's back injury to his suicide the determination of causation was not one of fact but one of law. Respondent argues that because petitioners failed to provide the Industrial Commission with such expert testimony, the Commission's finding of a causal connection is erroneous as a matter of law.

Petitioners contend that the decision of the Industrial Commission is supported by the manifest weight of the evidence and is consistent with the decisions in *County of Cook* and *Harper*. Petitioners assert that they need only show that the work-related injury was a causative factor in the subsequent suicide and need not prove that the injury was the sole cause or even the principal cause of the suicide. (*Leason v. Industrial Com.* (1973), 55 Ill. 2d 486; *Gus T. Handge & Son Painting Co. v. Industrial Com.* (1965), 33 Ill. 2d 201.) Petitioners submit that the facts surrounding the reason for decedent's suicide, including the extent of his pain from the back injury and the extent to which his marital difficulties contributed to his suicide, were dis-

puted by the parties, and the question of causation was one of fact. Petitioners point out that the Commission had before it the objective findings of the treating doctors and that these objective findings, along with other evidence presented, were sufficient to support the determination that decedent's reaction to pain from his back injury drove him to suicide. Petitioners contend that it would be unreasonable to require the presentation of psychiatric testimony to show a connection between the back injury and the suicide where an insubstantial period of time passed between the injury and death, and where the medical treatment sought by decedent was for the pain suffered as the result of his back injury, not his mental condition. As to the evidence presented concerning decedent's marital difficulties and prior medical problems, petitioners point out that decedent had no history of any prior suicide attempt and that it was only after the back injury that decedent continually complained of pain and underwent a personality change. Petitioners also argue that the note written by decedent was clearly admissible into evidence under the state-of-mind exception to the hearsay rule.

The determination of whether decedent's suicide arose out of and in the course of his employment was a question of fact for the Industrial Commission. Although the medical testimony presented was not conflicting, the inferences to be drawn from that testimony, the credibility of the witnesses, and the conclusions to be reached from an evaluation of the evidence are matters within the province of the Industrial Commission, and the Commission's decision will not be set aside unless contrary to the manifest weight of the evidence. (*Seiber v. Industrial Com.* (1980), 82 Ill. 2d 87, 97; *Yost v. Industrial Com.* (1979), 76 Ill. 2d 548, 551; *Long v. Industrial Com.* (1979), 76 Ill. 2d 561, 565.) Petitioners had the burden to prove by a preponderance of competent evidence that decedent's injury was a causative factor of his suicide. (*Parsons v. Industrial Com.* (1981),

84 Ill. 2d 346, 349; *O'Dette v. Industrial Com.* (1980), 79 Ill. 2d 249, 253.) While the injury need not have been the sole or principal cause of the suicide (*Westinghouse Electric Co. v. Industrial Com.* (1976), 64 Ill. 2d 244, 249; *Leason v. Industrial Com.* (1973), 55 Ill. 2d 486, 493; *Gus T. Handge & Son Painting Co. v. Industrial Com.* (1965), 33 Ill. 2d 201, 205), there must be evidence from which the inference can be drawn that the injury was a causative factor. (*County of Cook v. Industrial Com.* (1981), 87 Ill. 2d 204; *Harper v. Industrial Com.* (1962), 24 Ill. 2d 103; Annot., 15 A.L.R.3d 616, sec. 5, at 631 (1967); Annot., 15 A.L.R.3d 17, sec. 5 (1981 Supp.), and cases collected therein.) *County of Cook* and *Harper* do not require that the precise mental state of decedent be shown, and medical testimony is not required to establish causation. *Westinghouse Electric Co. v. Industrial Com.* (1976), 64 Ill. 2d 244, 250; *Union Starch & Refining Co. v. Industrial Com.* (1967), 37 Ill. 2d 139, 144.

The evidence shows that following the injury decedent's complaints of pain were persistent and he regularly sought medical treatment for this pain. Prior to the injury of May 14, 1978, there is no evidence of preexisting back pain. It is well recognized that an employer takes his employees as he finds them (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 17), and thus the question here is not whether the injury would cause any other employee similar pain but whether the pain experienced by decedent as a result of the back injury drove him to commit suicide. The objective findings of the physicians treating decedent and the testimony of others in a position to observe him indicate that decedent believed he was in considerable pain from the time of his injury until his death. Following the injury he did not return to work and he became less active. While decedent's marital difficulties had in the past affected his mental and physical well-being it was not until after the back injury that decedent made any attempt to

take his life.

In support of its contention that the suicide note was improperly admitted into evidence, respondent argues that this court has ruled as a matter of law that statements of an injured employee, made prior to his death, must be excluded from evidence as inadmissible hearsay, the sole exception to this rule being declarations made by the employee to his attending physician. Petitioners submit that the evidence rules applicable to proceedings before the Industrial Commission are the same as those which generally prevail in civil cases, and contend that decedent's statement that he could not go on due to his pains and back trouble expressed his then-existing state of mind with respect to pain and bodily health, and thus was admissible into evidence under the state-of-mind exception to the hearsay rule.

The hearsay rule is not absolute, and many exceptions are made based on necessity (see 5 Wigmore, Evidence sec. 1421 (Chadbourn rev. ed. 1974)) and circumstantial probability of trustworthiness (see 5 Wigmore, Evidence sec. 1422 (Chadbourn rev. ed. 1974)). It has long been the rule that an individual's declarations as to his state of mind are admissible to show that state of mind and such other things as proof of a state of mind tends to establish. (*La Salle County Carbon Coal Co. v. Industrial Com.* (1934), 356 Ill. 421.) It is difficult to perceive that a note found under the circumstances shown here would not reflect the true state of mind and feelings of the decedent.

*Asher Brothers Amusement Enterprises v. Industrial Com.* (1924), 311 Ill. 258, upon which respondent relies, is clearly distinguishable. There the statements attributed to the decedent were that "his leg was sore," "that he bumped his leg on a seat in the aisle," and that "he bumped the same sore spot that same day." These statements purport to state the facts relevant to an occurrence and are not descriptive of a state of mind. The arbitrator

did not err in admitting the note into evidence.

For the reasons stated the judgment of the circuit court of La Salle County is affirmed.

*Judgment affirmed.*

CHIEF JUSTICE RYAN took no part in the consideration or decision of this case.

JUSTICE SIMON, specially concurring:

I am troubled by the majority's lack of attention to what I consider the basic issue in this case: whether dependents of a suicide victim must, in order to collect worker's compensation, show more than that the suicide would not have occurred but for an accident arising out of and in the course of his employment. I believe that *Harper v. Industrial Com.* (1962), 24 Ill. 2d 103, and *County of Cook v. Industrial Com.* (1981), 87 Ill. 2d 204, require more. They require the claimant to have lost his ability to rationally choose between life and death.

I do not believe that a person injured on the job should be permitted to rationally weigh the costs and benefits of a life of pain over death, choose death, and expect his dependents to be compensated for this. Bare causality is not enough under such circumstances. A man murdered by a criminal on the street on the way to visit his doctor is not covered by worker's compensation just because he would not have been going there if it had not been for a work-related injury. A man who is murdered by his wife because she does not like his constant complaining over the pain he is suffering as a result of a work-related injury would not be covered. Even less would one expect a worker to be who, with his wits about him, takes his own life. He made the choice knowing the consequences. He is responsible for his own conduct.

Both *Harper* and *County of Cook* go to great lengths to describe the emotional disorientation suffered by their respective decedents. In *Harper,* a psychiatrist testified that

the decedent's back injury caused a definite psychiatric illness with a probable diagnosis of severe chronic depression which later led to a lack of confidence in ability to perform in life situations. In *County of Cook*, the decedent's pain prevented her from eating and sleeping. She cried often. She told her psychiatrist that she was angry with her husband, employer, and doctors because they did not believe she was in pain. He diagnosed her condition as severe chronic depression.

Professor Larson divides the States into two categories with regard to the compensability of suicide. Both sets of States, however, use a rule that requires the decedent's suicide to be the result of some mental disturbance. He stated, "Suicide under the majority rule [under which he includes Illinois based upon *Harper v. Industrial Commission*] is compensable if the injury produces mental derangement and the mental derangement produces suicide. The minority rule is that suicide is not compensable unless [it is a] direct result of a work-connected injury [and] insanity of such severity as to cause the victim to take his own life through an uncontrollable impulse or in a delirium of frenzy without conscious volition to produce death." (1A Larson, *The Law of Workmen's Compensation* sec. 36.00 (1979).) he goes on to say that under the majority rule there remains some room for uncertainty on precisely how deranged the decedent's mind must be. (See *Soileau v. Travelers Insurance Co.* (La. App. 1967), 198 So. 2d 543 ("despondency" is not sufficient); *Franzoni v. Loew's Theatre & Realty Corp.* (1964), 22 App. Div. 2d 741, 253 N.Y.S.2d 505 (depression is not enough).) But the possibility of recovery without any lapse in rationality has apparently never been acknowledged by any court.

While I acknowledge that it is not always necessary to have expert testimony to establish a breakdown in a decedent's capacity for rational thought, some evidence of mental impairment is necessary. I am confident that the Indus-

368

trial Commission was aware of this requirement and based its conclusion on a finding in this case that there was mental impairment which resulted from the injury. Although the evidence on this point is not overwhelming, it is still sufficient so that such a finding would not be against the manifest weight of the evidence. I therefore concur in the result which the court has reached.