In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 01-2488 & 01-2958

ROSE CLEVELAND, individually and in her capacity as
executrix of the estate of Robert Cleveland, Esquire,
deceased,

*Plaintiff-Appellant,*

*v.*

MICHAEL ROTMAN,

*Defendant-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 424—**John Grady**, *Judge.*

ARGUED MAY 14, 2002—DECIDED JULY 17, 2002

Before COFFEY, MANION, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Rose Cleveland is executrix of the
estate of her late husband, Robert Cleveland, who commit-
ted suicide in 1998. Cleveland alleges that events surround-
ing 15 years of tax collection proceedings caused her hus-
band severe depression and led to his suicide. She filed a
four-count suit on the estate's behalf against the Internal
Revenue Service, an IRS officer, and her husband's tax
attorney, Michael Rotman. We address only the claims
against Rotman, which are for legal malpractice sounding
in contract and tort. Cleveland's estate appeals from the

district court's dismissal for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

We review *de novo* the district court's grant of a motion to dismiss under Rule 12(b)(6). *See Help At Home, Inc. v. Medical Capital, L.L.C.*, 260 F.3d 748, 752 (7th Cir. 2001). In doing so, we accept all well-pleaded factual allegations in the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor. We will affirm the dismissal if it appears beyond doubt that the plaintiff cannot prove any set of facts entitling it to relief.

In the late 1960's, Robert Cleveland, who was an attorney, became involved in a dispute with the IRS over a tax issue. The tax proceedings stretched over 15 years, involving multiple trials and appeals. Cleveland's estate alleges that the IRS engaged in a campaign of unauthorized activities that stripped Cleveland of all assets and income. Unable to pay his legal bills and the interest and penalties that the IRS assessed (which totaled $250,000), Cleveland went into debt. Starting in 1991, the IRS confiscated Cleveland's social security income. The estate also alleges that the IRS levied on money that Cleveland obtained in a settlement for one of his law clients, causing the client to wait for years to receive his settlement money. The estate alleges that this is "one example of how . . . the IRS caused Mr. Cleveland to get disbarred from practicing law in Illinois." The tax dispute caused Cleveland to suffer severe depression. As a result, Cleveland's therapist informed the IRS in writing that Cleveland was suicidal.

In 1996 Cleveland retained Rotman for advice in resolving the tax dispute. At the time, Cleveland's therapist informed Rotman of Cleveland's poor financial status, his severe depression, and his suicidal tendencies. Rotman advised Cleveland that he needed to file tax returns for a 10-year period, but Cleveland claimed that he was unable to

calculate his income and expenses for this period because his financial records had been lost during office moves and discarded by others during divorce proceedings (involving a different wife, not Rose). As a result, it is alleged that Rotman told Cleveland to estimate his income and expenses for the relevant years.

Apparently, Cleveland's estimates did not agree with IRS figures, and although the IRS had previously declared Cleveland's account uncollectible, it decided to audit him again. It notified Cleveland of the impending audit in February 1997. Because she was concerned over Cleveland's suicidal depression, Cleveland's therapist intervened and succeeded in postponing the audit until January 1998. On January 26, 1998, shortly before the audit was scheduled to take place, Cleveland shot himself in the head at home in his wife's presence. He was 74 years old.

Cleveland's estate alleges that Rotman committed malpractice, which triggered the IRS's proposed 1998 audit, which in turn triggered Cleveland's suicide. The estate argues that the district court erred in ruling that, as a matter of law, a plaintiff's allegations were insufficient under Rule 12(b)(6).

A plaintiff may style a claim for legal malpractice as either a tort or contract claim. *See Collins v. Reynard*, 154 Ill. 2d 48, 50 (1992). Under either a tort or contract theory, the elements of a legal malpractice claim are (1) an attorney-client relationship establishing a duty on the attorney's part, (2) breach of that duty, (3) proximate cause establishing that but for the breach the plaintiff would not have been injured, and (4) resulting damages. *See Radtke v. Murphy*, 312 Ill. App. 3d 657, 662 (2000); *Serafin v. Seith*, 284 Ill. App. 3d 577, 586-87 (1996); *Coughlin v. SeRine*, 154 Ill. App. 3d 510, 514 (1987).

It is well-established under Illinois law that a plaintiff may not recover for a decedent's suicide following a tortious

act because suicide is an independent intervening event that the tortfeasor cannot be expected to foresee. *See Kleen v. Homak Mfg. Co.*, 321 Ill. App. 3d 639, 640 (2001); *Moss by Moss v. Meyer*, 117 Ill. App. 3d 862, 864 (1983); *Jarvis v. Stone*, 517 F. Supp. 1173, 1175 (N.D. Ill. 1981); *Little v. Chicago Hoist & Body Co.*, 32 Ill. 2d 156, 158-59 (1965); *Stasiof v. Chicago Hoist & Body Co.*, 50 Ill. App. 2d 115, 122 (1964). The district court found this rationale equally applicable in the contract context and therefore dismissed the estate's claims arising from Cleveland's suicide.[1]

We agree with the district court that Cleveland's suicide was an independent intervening event that broke the chain of causation from Rotman's alleged malpractice to Cleveland's death. Cleveland was an adult, and the estate has not alleged that he was mentally unstable. *See Kleen*, 321 Ill. App. 3d at 643; *Jarvis*, 517 F. Supp. at 1175 (recognizing exception to suicide rule where, as proximate result of a head injury caused by tortfeasor's negligence, victim becomes "insane and bereft of reason" and commits suicide as a result). Therefore, we assume that Cleveland was a competent adult who clearly understood what he was doing and intentionally took his own life. Moreover, Cleveland's estate fails to establish that Rotman breached a duty to Cleveland,

---

[1] Cleveland's estate argues, however, that foreseeability is a question of fact, not of law, and therefore that the district court erred in not allowing the question to go to a jury. The estate cites to *City of Streator v. Industrial Commission*, 92 Ill. 2d 353, 363 (1982), and *Harper v. Industrial Commission*, 24 Ill. 2d 103, 110 (1962). These cases are inapplicable because they dealt with worker's compensation claims. Because the worker's compensation statutory scheme was designed to replace common law, legal causation is irrelevant, and only factual causation need be established. *See In re Estate of Dierkes*, 191 Ill. 2d 326, 331 (2000). Therefore, the estate's reliance on these cases is misplaced because they were not decided under the common law of tort or contract.

or that Rotman's alleged negligence proximately caused Cleveland's suicide.

Essentially, Cleveland's estate seeks to impose on Rotman a duty to foresee and avoid a client's suicide. Although an Illinois court imposed such a duty on a psychiatrist who knew of his patient's history of suicidal depression and yet failed to protect the patient from self-harm, *see Winger v. Franciscan Med. Ctr.*, 299 Ill. App. 3d 364, 371-72, 375 (1998), the estate here points to no case law extending such a duty to the attorney-client context. Because of the differences between the psychiatrist-patient relationship and the attorney-client relationship, we see no justification for extending such a duty to attorneys. Psychiatrists are health care professionals trained to care for their patients' mental and emotional health. By contrast, attorneys are medical laypeople who cannot be reasonably expected to anticipate the mental health consequences of their legal advice.

Whether Rotman had a duty to prevent Cleveland's suicide depends on the suicide's foreseeability, its likelihood, the magnitude of the burden of guarding against it, and the potential consequences of placing that burden on Rotman. *See Collins*, 154 Ill. 2d at 51. As we just noted, because Rotman was not a medical professional, he could not have reasonably been expected to foresee that his allegedly erroneous advice would drive Cleveland to suicide. Cleveland's estate urges, however, that Rotman should have foreseen that bad tax advice could drive Cleveland to suicide because he knew that Cleveland was suffering from severe depression triggered by his tax woes. Nonetheless, based on his lack of psychological training, Rotman cannot have reasonably been expected to foresee Cleveland's suicide.

Additionally, suicide is generally not a likely result of bad tax advice, especially when that advice concerns the relatively routine matter of filing tax returns. By the time Cleveland retained Rotman, the tax dispute had been going

on for 15 years, and Cleveland was already suffering from severe depression. In the context of the entire series of events arising from Cleveland's IRS dispute, Rotman's allegedly erroneous advice was not more likely than any of the other events to cause Cleveland's suicide.

Moreover, the magnitude of placing the burden on an attorney to foresee and prevent a client's suicide is very great. Attorneys cannot reasonably be expected to screen potential clients for suicidal tendencies. Imposing such a burden would expose attorneys to an unreasonable risk of liability, which would ultimately deprive visibly depressed people of competent legal advice. Therefore, Cleveland's estate fails to establish that Rotman had a duty to foresee and avoid Cleveland's suicide.

Even assuming that Rotman had such a duty, the estate fails to show that Rotman's allegedly erroneous advice proximately caused Cleveland's suicide. A proximate cause is one that produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause. *See Kleen*, 321 Ill. App. 3d at 641. Proximate cause is composed of two elements: legal cause and cause in fact. Legal cause exists where the injury was of a type that a reasonable person would foresee as a likely result of his or her conduct. *See id.* at 642.

As we've noted, it was not reasonably foreseeable that Cleveland's suicide was a likely result of Rotman's advice. Additionally, the timing of events weakens the proximate cause argument. Rotman advised Cleveland to file estimated tax returns in 1996. The IRS notified Cleveland of its intended audit in February 1997. Cleveland did not commit suicide until almost a year later, in January 1998. Even assuming that Rotman's allegedly erroneous advice precipitated the audit, Cleveland was aware of the impending audit for almost a year before taking his life. Given the significant time lapse between the alleged triggering event and

Cleveland's suicide, as well as Cleveland's history of depression, which had its origins in events that preceded his relationship with Rotman—including the loss of his legal practice, his disbarment, the confiscation of his assets and income, and his mounting debt—Cleveland's suicide did not follow Rotman's advice through a natural and continuous sequence of events unbroken by any effective intervening cause. Therefore, Rotman's allegedly erroneous advice did not proximately cause Cleveland's suicide. Thus, the district court correctly held that the estate cannot recover for Cleveland's suicide.

The estate also argues that the district court erred in holding that a claim for Cleveland's emotional distress arising from Rotman's malpractice did not survive Cleveland's death. The Illinois Survival Act provides that actions to recover damages for injury to the person, except actions for slander and libel, survive death. *See* ILCS 5/27-6. Early interpretations of the act held that only actions for physical damages, not emotional damages, survived death. Courts now view the act as a remedial statute that is to be construed liberally to avoid abatement. *See Owens v. Archer-Daniels-Midland Co.*, 30 F. Supp. 2d 1082, 1084 (C.D. Ill. 1999); *Walter v. Board of Educ. of Quincy Sch. Dist. No. 172*, 93 Ill. 2d 101, 108 (1982).

Given that Illinois courts liberally construe the survival act, it's possible that an action for negligent infliction of emotional distress survives death. We express no opinion on this subject, however, because we find that Cleveland's estate failed to state such a claim. This is so because Illinois follows the "impact rule," which allows a plaintiff to recover for negligent infliction of emotional distress only if the distress is directly and causally related to a physical injury. *See In re Aircrash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 948 F. Supp. 747, 750 (N. D. Ill. 1996); *Allen v. Otis Elevator Co.*, 206 Ill. App. 3d 173, 178 (1990); *Braun v. Cra-*

*ven*, 175 Ill. 401, 420 (1898).[2] Here, the estate did not allege that Rotman's negligence caused Cleveland a physical injury that directly caused his emotional distress. Therefore, regardless of whether an action for negligent infliction of emotional distress could survive Cleveland's death, his estate fails to state such a claim.

The estate's next argument is that the district court erred in dismissing its claim for financial damages because the estate failed to plead damages with specificity. Cleveland's estate alleges that, by triggering the IRS audit, Rotman's allegedly erroneous tax advice caused Cleveland to lose his social security income. Yet, the estate's complaint also alleged that the IRS began confiscating Cleveland's social security income in 1991, 5 years before Rotman was retained to give tax advice. Additionally, Cleveland's estate failed to allege how the impending IRS audit resulted in other financial damages. Therefore, because the estate failed to allege an adequate factual basis for its damages claim, the district court properly dismissed it.

In a related claim, Cleveland's estate argues that the district court should have allowed it to amend the complaint to include more facts concerning the financial damages claim. The estate does not allege that it actually filed a motion to amend the complaint in this regard, nor does the record reflect that the estate filed such a motion. Where a plaintiff

---

[2] Although the Illinois Supreme Court partially replaced the impact rule with a "zone-of-danger" rule for plaintiffs who were bystanders to negligent acts that subjected them to a high risk of physical impact, *see Rickey v. Chicago Transit Auth.*, 98 Ill. 2d 546 (1983), later cases hold that *Rickey* did not completely replace the impact rule. *See Corgan v. Muehling*, 143 Ill. 2d 296, 305-06 (1991) (holding that *Rickey* did not alter impact rule for negligence plaintiffs who were not bystanders); *Pasquale v. Speed Prod. Eng'g*, 166 Ill. 2d 337, 350 (1995) (holding that *Rickey* did not alter impact rule for bystander plaintiffs in strict liability cases).

does not move to amend, the district court is under no obligation to amend the complaint *sua sponte*. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1192 (7th Cir. 1990). Therefore, the district court did not err in dismissing the estate's complaint without allowing the estate to amend its factual allegations regarding economic damages.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*